IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAUL REAVES, individually and on behalf of all persons and entities similarly situated, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 5:25-CV-00453-JD |
| | § | |
| WORLDWIDE GOLF SHOPS LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, STRIKE CLASS ALLEGATIONS AND OPENING BRIEF IN SUPPORT

COMES NOW Defendant Worldwide Golf Shops LLC ("Defendant" or "WGS") in the above-captioned case and files this Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice or, in the Alternative, Strike Class Allegations and Opening Brief in Support ("Motion").

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................1

II.     FACTUAL BACKGROUND .....................................................................3

III.    LEGAL STANDARD................................................................................4

IV.     ARGUMENT ............................................................................................6

    A.    THE FAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR
           FAILURE TO STATE A CLAIM UNDER THE TCPA........................6

        1.    Plaintiff Has Failed to Sufficiently Allege that the Calls
              at Issue Were Placed to a Residential Landline and
              Admits His Phone Is a Cellphone. .........................................6

            a.    Cellular Telephones Should Not Be
                  Considered "Residential" Following the
                  Supreme Court's Overruling of *Chevron*...........................7

            b.    It Is Not a Violation of the Hobbs Act to
                  Hold that Cellular Telephones Are Not
                  "Residential" Under Section 227(c)..................................13

        2.    Plaintiff Has Failed to Sufficiently Allege that He
               Personally Registered His Phone on the National Do
               Not Call Registry at Least 31 Days Before Receiving
               the Alleged Text Messages. .................................................16

        3.    Plaintiff Fails to Plead Facts Suggesting a "Willful" or
               Knowing" Violation. ...........................................................17

    B.    PLAINTIFF HAS ALREADY HAD AN OPPORTUNITY TO
           REPLEAD SO FURTHER AMENDMENT WOULD BE FUTILE
           AND DISMISSAL WITH PREJUDICE IS WARRANTED. ..............19

    C.    MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12.20

V.      CONCLUSION .......................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 4

*Braver v. Clear Sky Financial, LLC*,
   No. CIV-22-710-R, 2024 U.S. Dist. LEXIS 126799 (W.D. Okla. July
   18, 2024) ................................................................................................................ 18

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ................................................................................................ 8

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*,
   982 F.3d 258 (4th Cir. 2020) ........................................................................... 14, 15

*Countryman v. Farmers Ins. Exch.*,
   545 F. App'x 762 (10th Cir. 2013) ....................................................................... 12

*Cunningham v. Sunshine Consulting Grp.*,
   LLC, No. 3:16-cv-2921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) ................. 11

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .................................................................................. 20

*Gaker v. Q3M Ins. Sols.*,
   No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8,
   2023) ................................................................................................................. 10, 11

*Gohier v. Enright*,
   186 F.3d 1216 (10th Cir.1999) .............................................................................. 19

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ............................................................................. 19

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) .............................................................................. 5

*Hayes v. Whitman*,
   264 F.3d 1017 (10th Cir. 2001) ............................................................................. 19

*Hill v. Vanderbilt Cap. Advisors, LLC*,
    702 F.3d 1220 (10th Cir. 2012) ...................................................................... 5

*Hockenbury v. Hanover Ins. Co.*,
    No. CIV-15-1003-D, 2016 U.S. Dist. LEXIS 16159 (W.D. Okla. Feb.
    10, 2016) ............................................................................................... 20, 21

*Jackson v. Am. Elec. Power/Pso Okla.*,
    No. 21-cv-409-JDR, 2025 U.S. Dist. LEXIS 49161 (N.D. Okla. Mar.
    17, 2025) ......................................................................................................... 5

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................... *passim*

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 5

*Mainstream Mktg. Servs., Inc. v. F.T.C.*,
    358 F.3d 1228 (10th Cir. 2004) ...................................................................... 4

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
    606 U.S. ___ (2025) ............................................................................... *passim*

*Michigan v. EPA*,
    576 U.S. 135, S. Ct. 2699, 2713, 192 L.Ed.2d 674 (2015 (Thomas, J.,
    concurring) (opinion concurring in judgment)) ......................................... 15

*Minter v. Prime Equip. Co.*,
    451 F.3d 1196 (10th Cir. 2006) ................................................................... 19

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    588 U.S. 1 (2019) .................................................................................. 13, 15

*Rice v. Valmont Indus., Inc.*,
    No. 12-CV-602-GKF-TLW, 2012 U.S. Dist. LEXIS 155883 (N.D.
    Okla. Oct. 31, 2012) ..................................................................................... 18

*Rombough v. Robert D. Smith Ins. Agency, Inc*.,
    No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9,
    2022) .................................................................................................... 16, 17

*Russello v. United States*,
    464 U.S. 16, 104 S. Ct. 296, 78 L.Ed.2d 17 (1983) ....................................... 9

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Ca. 2009) .................................................................. 20, 21

*Spokeo, Inc. v. Robins*,
    570 U.S. 330 (2016) ................................................................................................ 5

*Stubbs v. McDonald's Corp.*,
    224 F.R.D. 668 (D. Kan. 2004) .............................................................................. 20

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) .............................................................................................. 17

*Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022) ................................................................ 11

*Viernow v. Euripides Dev. Corp.*,
    157 F.3d 785 (10th Cir. 1998) .............................................................................. 19

**Statutes**

5 U.S.C. §§ 551–559 (Administrative Procedure Act) .................................................. 7, 8

28 U.S.C. §§ 2341–2351 (Hobbs Administrative Orders Review Act) .................... *passim*

47 U.S.C.
    § 227 (2025) ................................................................................................. 1, 2, 14
    § 227(b)(1)(A) ...................................................................................................... 21
    § 227(b)(1)(A)(iii) ................................................................................................. 9
    § 227(b)(3) ............................................................................................................. 2
    § 227(c)(5)..................................................................................................... 6, 17, 18
    § 402(a) ................................................................................................................. 13

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105
    Stat. 2394 (1991)............................................................................................ *passim*

**Rules and Regulations**

16 C.F.R. § 310.4(b)(3)(iv) .......................................................................................... 17

47 C.F.R. § 64.1200(c)(2)......................................................................................... 1, 16

47 C.F.R. § 64.1200(f)(15)............................................................................................. 1

18 FCC Rcd. 14014 ................................................................................................. 8, 14

Federal Rule of Civil Procedure

12 .................................................................................................................. 20
12(b)(1) .......................................................................................................... 5
12(b)(6) ...................................................................................................... 4, 6
12(f) ......................................................................................................... 20, 21
15 .................................................................................................................. 19

## Other Authorities

137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen) ............................................. 10

*Hearings Before the Senate Comm. On Commerce, Science, and
    Transportation*, 102nd ............................................................................. 10

*Hearings on S. 875, 1410, and 1462 Before the Subcomm. on
    Communications of the Senate Comm. on Commerce, Science, and
    Transportation*, 102nd ............................................................................. 10

*Residence, Black's Law Dictionary, Sixth Edition* (1990) ............................................. 9

*Residential, Webster's Third New International Dictionary* (1981) ............................... 9

*S. 1410, the Telephone Advertising Consumer Protection Act* ...................................... 10

*S. 1462, the Automated Telephone Consumer Protection Act of 1991* ......................... 10

S. Rep. No. 102-178 (1991) ................................................................................. 10

U.S. Constitution ................................................................................................ 5

# I.     <u>INTRODUCTION</u>

Plaintiff Paul Reaves's ("Plaintiff" or "Reaves") First Amended Class Action Complaint [ECF No. 21] ("FAC") against WGS, alleging claims under the Telephone Consumer Protection Act of 1991 ("TCPA"), should be dismissed with prejudice for the same reasons raised in WGS's original Motion to Dismiss Plaintiff's Complaint with Prejudice or, in the Alternative, Strike Class Allegations and Opening Brief in Support [ECF No. 20] ("Original MTD"). Specifically, Plaintiff continues to fail to state plausible claims for relief and does not allege sufficient facts to support those claims.

Plaintiff's FAC fails for at least three reasons:

1.     Although Plaintiff has attempted to supplement his FAC with additional facts that were absent from the original Class Action Complaint [ECF No. 1] ("Complaint"), Plaintiff still fails to allege that his telephone number is a residential phone number. In fact, the new allegations in the FAC affirmatively show that the telephone number at issue is associated with a cellular phone, not a residential landline. This distinction is critical, as the plain language of the TCPA expressly differentiates between residential and cellular phone numbers. *See* 47 U.S.C. § 227 (2025); Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). Moreover, Plaintiff's TCPA claim must be dismissed because the TCPA's Do Not Call statute does not apply to text messages, it applies only to telephone calls. *See* 47 C.F.R. § 64.1200(c)(2) (the "DNC Provision").[1]

---

[1] The FCC's definition of a "telephone solicitation" excludes those *calls* made with prior invitation or permission. 47 C.F.R. § 64.1200(f)(15).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT WITH PREJUDICE, OR IN THE ALTERNATIVE, STRIKE CLASS
ALLEGATIONS AND OPENING BRIEF IN SUPPORT                     Page 1 of 23

2.      Tellingly, Plaintiff has failed to include any additional facts in his FAC demonstrating that he personally registered the telephone number at issue on the National Do Not Call Registry ("Registry"). This omission is telling, as it underscores the true nature of this matter—Plaintiff is pursuing a reassigned number claim. Plaintiff attempts to sidestep this deficiency by alleging, in conclusory fashion, that his number "has been registered" on the Registry since 2017. *See* FAC ¶ 17. However, this conclusory allegation fails to satisfy the plain language of the TCPA, which *requires* that a plaintiff registers his or her *own* phone number on the Registry. *See* 47 U.S.C. § 227.

3.      Plaintiff has not adequately alleged a "willful" or "knowing" violation to enable him to recover treble damages. *See* 47 U.S.C. § 227(b)(3).

As further detailed below, the allegations are insufficient under the Federal Rules of Civil Procedure to sustain this action against WGS. Accordingly, this case should be dismissed with prejudice.

Alternatively, Plaintiff's class allegations should be stricken because the class definition is impermissibly overbroad. Specifically, the proposed class fails to exclude any members who, despite having residential telephone numbers on the Registry, may have provided valid consent to receive calls and messages from WGS. Moreover, Plaintiff does not adequately represent the interests of the putative class as his own telephone number does not constitute a "residential phone number" nor did he, himself, register his number on the Registry.

## II.     <u>FACTUAL BACKGROUND</u>

Presumably recognizing the merit of WGS's Original MTD, Plaintiff chose not to oppose it and instead filed his FAC on July 18, 2025. The FAC contains only limited revisions to the original, boilerplate lawsuit filed on April 21, 2025, namely: (1) the addition of paragraphs 21 through 24, which attempt to characterize Plaintiff's cellphone number as a residential line; (2) a modified putative class definition at paragraph 33, intended to address the previously overbroad and "fail-safe" nature of the original class definition; and (3) removal of Plaintiff's improper request for injunctive relief. *See generally* FAC.

Specifically, Plaintiff alleges he never consented to receive calls from WGS. *See* FAC ¶ 29. He further claims that he "received at least three telemarketing text messages from Defendant between December 2023 and April 2024." FAC ¶ 25. Plaintiff also asserts that his phone number "is on the National Do Not Call Registry and has been registered there since 2017." *Id.* ¶ 17. However, Plaintiff does not allege that he, himself, is the one who registered the number on the Registry. Additionally, he alleges that his number is used "for residential purposes and is not associated with a business," is used "for personal, family, and household purposes," and that it is "assigned to a residential telephone exchange service for consumers." *Id.* ¶¶ 18-20. Compared to the allegations in his original Complaint, Plaintiff's FAC includes additional factual assertions attempting to characterize his cellphone number as a residential number. *See* FAC ¶¶ 21–24. However, these new allegations also confirm that the number is not a residential landline. See FAC ¶¶ 21–23.

Moreover, as revised, Plaintiff brings this putative class action on behalf of all individuals whose residential telephone numbers were listed on the Registry for at least 31 days and who allegedly received more than one text message from or on behalf of WGS within a 12-month period during the four years preceding the filing of the Complaint.[2] *Id.* ¶ 33. Plaintiff further alleges that "Defendant's violations were negligent, willful, or knowing," and thus seeks treble damages of up to $1,500 per call. *Id.* ¶ 49.

Although many of Plaintiff's allegations are inaccurate, even accepting them as true for purposes of this Motion, Plaintiff fails to state a claim upon which relief can be granted against WGS. Accordingly, the FAC should be dismissed in its entirety.

## III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id.* Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the

---

[2] Reaves has captioned his FAC as "PAUL REAVES, individually and on behalf of all persons <u>and entities</u> similarly situated." *See* FAC Caption (emphasis added). To the extent Reaves seeks to include commercial telephone numbers or business lines used by 'entities' within the proposed class, WGS respectfully moves to strike those portions of the class definition. The protections of the TCPA—particularly those concerning the Registry— apply only to residential subscribers. *See Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1233 (10th Cir. 2004) (noting that residential telephones are landlines associated with homes, not businesses).

elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations without factual support do not suffice to state a valid claim for relief. *Jackson v. Am. Elec. Power/Pso Okla.*, No. 21-cv-409-JDR, 2025 U.S. Dist. LEXIS 49161, at *2 (N.D. Okla. Mar. 17, 2025) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

For Rule 12(b)(1), the U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "Standing to sue is doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 570 U.S. 330 (2016).

A plaintiff possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560). To establish an injury in fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, (internal quotations and citations omitted). Lack of standing is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) ("[D]ismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction.").

## IV.    <u>ARGUMENT</u>

### A.    THE FAC SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UNDER THE TCPA.

Plaintiff seeks relief under Section 227(c) of the TCPA. Section 227(c)(5) provides, in pertinent part, a private right of action to "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." 47 U.S.C. § 227(c)(5) (*emphasis added*). Section 227(c) requires rulemaking and regulations based on that rulemaking "concerning the need to protect *residential* telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* (*emphasis added*). Section 64.1200(c) is one such regulation which prohibits all telephone solicitations to "[a] *residential* telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry," unless there is, *inter alia*, prior express consent or an established business relationship. *Id.* (*emphasis added*).

### 1.    Plaintiff Has Failed to Sufficiently Allege that the Calls at Issue Were Placed to a Residential Landline and Admits His Phone Is a Cellphone.

Plaintiff has failed to sufficiently plead a violation of Section 227(c). Section 227(c)(5) only applies to subscribers of "residential" phones. 47 U.S.C. § 227(c)(5). Plaintiff alleges in conclusory terms that his number is used for "residential purposes and is not associated with a business" and for "personal, family, and household purposes." FAC ¶¶ 18, 20. And while Plaintiff attempted to add additional allegations to support his assertion that the number is residential; Plaintiff, in fact, admitted that his phone is a "cellphone" on a "personal (not

business) plan with Cricket."[3] *See id.* ¶¶ 21-24. And an ordinary reading of the relevant TCPA statutes does not support the position that cellular telephones are residential numbers.

    a.    <u>Cellular Telephones Should Not Be Considered "Residential" Following the Supreme Court's Overruling of *Chevron*</u>.

The United States Supreme Court's recent decisions in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. ___ (2025) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) significantly altered the legal framework governing interpretation of the TCPA. Together, these rulings empower courts to independently interpret the TCPA without being bound by prior Federal Communications Commission ("FCC") interpretations.

In *McLaughlin*, the Supreme Court held that district courts are no longer bound by the Hobbs Administrative Orders Review Act ("Hobbs Act") to defer to FCC interpretations of the TCPA in private civil litigation. Instead, courts must apply "ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, at *27; *see* 28 U.S.C. §§ 2341–2351. his decision is particularly significant in the context of the TCPA, where courts have historically deferred to FCC declaratory rulings under the Hobbs Act. By removing this constraint, *McLaughlin* empowers district courts to independently interpret the statute without being bound by prior FCC guidance. This decision builds on *Loper Bright*, where the Supreme Court ruled that the Administrative Procedure Act "requires courts to exercise their independent judgment in

---

[3] Notably, Cricket's full business name is "Cricket Wireless" and it is only a wireless service provider that *does not* offer residential service, only offers cellular network plans, and requires existing cellular service in order to port a telephone number to their cellular network. *See* https://www.cricketwireless.com/.

deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright* at 413; *see* 5 U.S.C. §§ 551–559. In fact, a court must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.*

Together, these cases stand for the proposition that district courts are no longer bound by FCC declaratory rulings and should, instead, "independently determine" the statutory meaning of the TCPA. *See McLaughlin*, at *2. Accordingly, prior FCC guidance, which established settled TCPA principles—such as whether text messages are "calls," whether a "called party" means the intended recipient of the call or the current subscriber of the number, and whether a cellular number constitutes a "residential telephone"—must now be independently interpreted by the Court using ordinary principles of statutory interpretation.

In light of *McLaughlin* and *Loper Bright*, Plaintiff's case should be reviewed independently by this Court, without reliance upon briefing or input from the FCC. Indeed, the legislative history of the TCPA supports a narrow construction of its scope. When Congress enacted the TCPA in 1991, text messaging technology—the basis of Plaintiff's FAC—did not yet exist. It was not until more than a decade later that the FCC guidance extended the TCPA's reach to include text messages, a determination made without direct congressional action.[4] This post hoc expansion raises serious questions about whether Congress ever intended for the TCPA to apply to such forms of communication.[5]

---

[4]  18 FCC Rcd. 14014, 14115.

[5]  Plaintiff alleges in his FAC that the Supreme Court ruled in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016), that the TCPA applies to text message. FAC ¶ 15. However, not

Accordingly, the Court should consider the statute's original context and purpose, and decline to extend its prohibitions to technologies that were unforeseeable at the time of enactment.

Moreover, at the time the TCPA was enacted, "a 'residential telephone' referred to a land line at a residence." *Id.*; *see also Residence, Black's Law Dictionary, Sixth Edition* (1990) (residence was defined as "[a] house where one's home is; a dwelling house."). "Residential" was defined as "of, relating to, or connected with residence or residences." *Residential, Webster's Third New International Dictionary* (1981). It is also necessary to remember that, at the time the TCPA was enacted, cellular telephones were in use and were referred to throughout the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii) ("any telephone number assigned to a . . . cellular telephone service . . . ."). Thus, Congress made to deliberate choice between "residential" and "cellular" telephones when defining the scope of the TCPA.   Specifically, it chose to refer to "residential subscribers," as opposed to "cellular telephone service subscribers," in Section 227(c).   "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion of exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted).

---

only is the Court's opinion based on deference to the FCC that is now irrelevant in light of *McLaughlin* and *Loper Bright*, but the Court's opinion that text messages qualify as a "call" within the scope of the TCPA is limited to Section 227(b) which concerns "calls," not Section 227(c) which concerns "telephone solicitations"—the issue in this case.

Not only did the common definition of "residential telephone" not include cellular telephones at the time the TCPA was enacted, but the legislative history overwhelmingly shows that cellular telephones were not considered "residential" phones. Sponsors of the TCPA referred to the need to protect privacy rights in the home and thereby phones purchased "for the convenience of the individual home-owner."[6] A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). The Director of the Congressional Budget Office differentiated between residential subscribers and cellular telephones, stating the Act banned, "all prerecorded or automatically-dialed telephone calls" to "cellular telephone numbers" and "residential subscribers." S. Rep. No. 102-178, at 7 (1991). Even an appendix to a Senate hearing distinguished between the two. *Computerized Telephone Sales Calls and 900 Service: Hearings Before the Senate Comm. On Commerce, Science, and Transportation*, 102nd Cong. 67 (1991) (appendix summary of the TCPA).

And even before *McLaughlin* and *Loper Bright*, district courts have deviated from the FCC's interpretation consistently with the above analysis of the TCPA's legislative history. In *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023), the court held that "the FCC's rulemaking authority under section

---

[6] *S. 1462, the Automated Telephone Consumer Protection Act of 1991; S. 1410, the Telephone Advertising Consumer Protection Act; and S. 857, Equal Billing for Long Distance Charges: Hearings on S. 875, 1410, and 1462 Before the Subcomm. on Communications of the Senate Comm. on Commerce, Science, and Transportation*, 102nd Cong. 3 (1991) (statement of Sen. Ernest F. Hollings, Chairman, S. Comm. on Commerce, Science, and Transportation).

227(c) extends only to unwanted telephone solicitations directed at 'residential telephone subscribers.'" *Id.* at *3. The court also noted that Congress's specific reference to "cellular telephone service" in § 227(b) evidenced that it was aware of the distinction between a cellular telephone and a residential telephone and "purposely protected only 'residential telephone subscribers' under § 227(c)." *Id.* Further, the court held "cell phones do not present the same concerns as residential telephones [because] the findings in the TCPA show a concern for privacy within the sanctity of the home [and] cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion." *Id.*; *see also Cunningham v. Sunshine Consulting Grp.*, LLC, No. 3:16-cv-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) ("[T]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.").

More compellingly, a court within the Eleventh Circuit acknowledged that it would have reached a different conclusion but for the constraints of Hobbs Act deference. In *Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1342 (S.D. Fla. 2022), the court described the inclusion of cellphone subscribers within the scope of Section 227(c) as "an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision." The court emphasized that "when Congress granted the FCC authority to create the Registry via section 227(c)(3), [it] intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers."

Although the FCC, in its 2003 Report and Order, interpreted the TCPA to allow wireless subscribers to register on the Registry and presumed such numbers to be "residential" for purposes of Section 227(c), this Court is not bound by that interpretation. Instead, the Court may take judicial notice of the legislative history of the TCPA, as set forth above, and make its own independent determination that, under *McLaughlin* and *Loper Bright*, cellphones are not considered "residential" phones protected by Section 227(c) of the TCPA. *See Countryman v. Farmers Ins. Exch.*, 545 F. App'x 762, 765 n.2 (10th Cir. 2013) (approving the decision to take judicial notice of legislative history materials). After all, as the Supreme Court stated, "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright*, 603 U.S. at 373.

Such an independent determination by this Court would be supported based on, not only the extensive legislative history of the TCPA wherein legislators often distinguished cellular telephones from residential phones, but also the statutory language itself. It is clear that "residential telephone subscribers" are understood to be land lines connected to the home. Therefore, Plaintiff's failure to plead that the allegedly unwanted texts he received were to a "residential," i.e., land line telephone connected to his home, are grounds for dismissal under Section 227(c) of the TCPA.

This Court may, understandably, be hesitant to hold that cellular telephones are not "residential" under Section 227(c), given the vastly different technological landscape of 2024 compared to 1991. Today, many individuals may rely on their cellphones as their primary means of communication, rather than landlines. However, it is the role of the judiciary to

interpret statutes based on their text and legislative intent—not to update them in response to societal or technological change. That responsibility lies with Congress. In light of *McLaughlin* and *Loper Bright*, it is now clear that courts must adhere to the statute's original meaning, and if the TCPA is to be modernized, it is for the legislature to do so. As the Supreme Court emphasized, "That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper Bright*, 603 U.S. at 400.

      b.    <u>It Is Not a Violation of the Hobbs Act to Hold that Cellular Telephones Are Not "Residential" Under Section 227(c).</u>

If this Court determines that cell phones are not "residential" within the meaning of Section 227(c) and chooses not to defer to the FCC's interpretation, such a holding would still be consistent with the Hobbs Act. The Hobbs Act requires aggrieved parties to challenge "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47" in a federal court of appeals within sixty days of the order's promulgation. 28 U.S.C. §§ 2342, 2344. More specifically, the Hobbs Act is invoked where a plaintiff seeks to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" the FCC's final orders, pre-enforcement. 28 U.S.C. § 2342; 47 U.S.C. § 402(a).

In *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019), the Supreme Court addressed whether a district court must adopt an FCC interpretation of the TCPA under the Hobbs Act. *Carlton* 588 U.S. at 6-7. There, the district court dismissed a TCPA action, concluding that a fax was not an "unsolicited advertisement" under the TCPA, rejecting a 2006 FCC order interpreting the phrase differently. *Id.* The Fourth Circuit vacated the judgment based on the Hobbs Act, arguing that only the court of appeals has exclusive

jurisdiction to determine the validity of certain final orders of the FCC. *Id.* Although the Fourth Circuit held that the district court was required to adopt the interpretation of "unsolicited advertisement" set forth in the FCC order, the Supreme Court vacated the judgment and remanded the case back to the Fourth Circuit to determine whether the FCC order was the equivalent of a "legislative rule"—which carries the force of law—or merely an "interpretive rule," which "may not be binding on a district court, and a district court therefore may not be required to adhere to it." *Id.* On remand, the Fourth Circuit held that the FCC order was "interpretive" and thus the district court was not bound to follow it. *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 263 (4th Cir. 2020) ("While agencies must follow formal notice and comment procedures to issue legislative rules, they need not do so to issue interpretive rules. The FCC did not engage in the notice and comment process with respect to the rule at issue here.").

Here, the FCC's interpretation of "residential" in Section 227(c) is likewise no more than that—an interpretive rule. In its 2003 TCPA order, the FCC sought comment on issues such as the establishment of a national do-not-call registry and the regulation of telemarketing practices. 18 FCC Rcd. 14014. The FCC never sought comment on whether "residential subscribers" should include cellular telephones but only sought comment on whether to establish a national do-not-call registry. In the 2003 order, the FCC discussed the definition of "residential subscriber" by interpreting Section 227 and interpreting the intent of Congress. *Id.* at 14037-38. Thus, this portion of the FCC rule is interpretive. Because interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory

process," the Hobbs Act is inapplicable. *Carlton*, 982 F.3d at 264 (citation omitted). Thus, should this Court choose not to give any deference to the FCC's interpretation of Section 227(c), it would not be in violation of the Hobbs Act.

Even if the FCC's 2003 TCPA order were considered a "legislative rule," the Hobbs Act is still inapplicable here because neither party is requesting that this Court enjoin, set aside, annul, suspend, or question the validity of the FCC order – this is a dispute between private parties. Instead, WGS asks this Court to determine that cellular telephones are not considered "residential" subscribers under Section 227(c), independent of the FCC's rules and orders. Notably, Justices Thomas and Gorsuch reiterated in their concurring opinion to *PDR Network* that interpreting a statute is not determining the validity of an agency order, thus such action would not invoke the Hobbs Act at all. *PDR Network*, 588 U.S. at 10 ("And to the extent the Hobbs Act requires courts to 'give the "force of law" to agency pronouncements on matters of private conduct' without regard to the text of the governing statute, the Act would be unconstitutional for the additional reason that it would 'permit a body other than Congress' to exercise the legislative power, in violation of Article I." *Id.* (quoting *Michigan v. EPA*, 576 U.S. 135, S. Ct. 2699, 2713, 192 L.Ed.2d 674 (2015 (Thomas, J., concurring) (opinion concurring in judgment)).

In seeming anticipation of his opinion in *Loper Bright* nine years later, Justice Thomas concluded his concurrence by questioning the shared assumption underlying both the Hobbs Act and *Chevron*—that "Congress can constitutionally require federal courts to treat agency orders as controlling law, without regard to the text of the governing statute"—and

---

Defendant's Motion to Dismiss Plaintiff's First Amended
Complaint with Prejudice, or in The Alternative, Strike Class
Allegations and Opening Brief in Support          Page 15 of 23

"emphasiz[ed] the need to reconsider it." *Id.* The Supreme Court has now done just that. In *Loper Bright*, it overturned *Chevron*, and in *McLaughlin*, it confirmed that district courts are no longer bound by the Hobbs Act to defer to FCC interpretations of the TCPA in private civil litigation. In light of these decisions, this Court should follow the direction of the Supreme Court to independently review the legislative history and plain text of Section 227(c), and hold that Plaintiff's cellular telephone is not protected as a "residential subscriber" under the TCPA.

### 2. Plaintiff Has Failed to Sufficiently Allege that He Personally Registered His Phone on the National Do Not Call Registry at Least 31 Days Before Receiving the Alleged Text Messages.

Plaintiff's allegation that his telephone "is on the National Do Not Call Registry and has been registered there since 2017," FAC ¶ 17, is insufficient to sustain Count 1 of the FAC.[7] The TCPA prohibits persons or entities from making telephone solicitations to anyone who has directly "registered his or her telephone number on the national DNC registry." 47 C.F.R. § 64.1200(c)(2). In *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022), the Northern District of Iowa found that although the plaintiff alleged that her telephone number "has been registered with the DNC Registry," such an allegation was insufficient for recovery under Section 64.1200(c). Specifically, the court noted that "the plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists *only* for a residential telephone

---

[7] Even after the filing of the Original MTD, Plaintiff did not and could not add additional facts that he, himself, registered the number to the Registry.

subscriber who has registered his or her telephone number on the national do-not-call registry." *Id.* at *2. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). Section 227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). "But Section 61.1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else." *Rombough*, 2022 WL 2713278, *2.

Here, Plaintiff does not and cannot allege that he personally registered his cellular phone number—let alone did so at least 31 days before receiving the alleged text messages.[8] Thus, because the plain language of Section 61.1200(c) states that a violation occurs *only* when a person or entity initiates a telephone solicitation to a residential telephone subscriber *who has registered <u>his or her</u> telephone number* on the Registry, Plaintiff's allegations are insufficient to sustain the FAC.

### 3.    Plaintiff Fails to Plead Facts Suggesting a "Willful" or Knowing" Violation.

Plaintiff also fails to adequately plead entitlement to treble damages under the

---

[8] The Registry's safe harbor provision provides a defense for inadvertent calls to registered numbers made within 31 days of accessing the Registry. 16 C.F.R. § 310.4(b)(3)(iv).

TCPA. The statute permits an award of treble damages only where a violation is shown to be "willful" or "knowing." 47 U.S.C. § 227(c)(5). Plaintiff offers only a single, conclusory allegation that "Defendant's violations were negligent, willful, or knowing." FAC ¶ 49. This allegation is insufficient, as it does not specifically assert that the calls were made in a willful or knowing manner. Rather, it presents a disjunctive list—"negligent, willful, **or** knowing"—which fails to plausibly allege the heightened mental state required for treble damages. *See id.* (emphasis added).

Such conclusory assertions do not meet federal pleading standards and cannot survive dismissal. *See, e.g.*, *Rice v. Valmont Indus., Inc.*, No. 12-CV-602-GKF-TLW, 2012 U.S. Dist. LEXIS 155883, at *5–6 (N.D. Okla. Oct. 31, 2012) (holding that conclusory allegations of willful behavior require supporting factual allegations to survive dismissal). In contrast, in *Braver v. Clear Sky Financial, LLC*, No. CIV-22-710-R, 2024 U.S. Dist. LEXIS 126799, at *6 (W.D. Okla. July 18, 2024), the plaintiff supported a claim for treble damages with specific facts: the defendant had previously been sued for similar conduct, one agent admitted to using a prerecorded message, and another agent attempted to persuade the plaintiff to misrepresent the nature of the call. In *Braver*, this Court held that this was the level of factual allegations needed to support a claim for willful or knowing violations of the TCPA. *Id.*

Here, Plaintiff alleges no such facts. Without any factual support for the claim that WGS acted willfully or knowingly, Count I fails to state a claim for treble damages and should

be dismissed.[9]

## B. PLAINTIFF HAS ALREADY HAD AN OPPORTUNITY TO REPLEAD SO FURTHER AMENDMENT WOULD BE FUTILE AND DISMISSAL WITH PREJUDICE IS WARRANTED.

The Court should dismiss the FAC with prejudice because Plaintiff has already had an opportunity to replead and failed to allege sufficient facts to support his claims; therefore, further "amendment would be futile." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997) ("[T]he trial court may deny leave to amend where the amendment would be futile."). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim[.]" *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* Amendment is also futile where a "plaintiff is using Rule 15 to make the complaint 'a moving target,' or to 'salvage a lost case by untimely suggestion of new theories of recovery[.]'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001)).

Here, Plaintiff has already been afforded an opportunity to amend his pleadings but has failed to cure the deficiencies present in his original Complaint. His inability to allege facts sufficient to support his claims confirms that any further amendment would be futile—had

---

[9] For example, Reaves does not allege in his FAC that WGS had actual notice of Reaves's alleged do-not-call status, or that he notified WGS that his number was on a do-not-call list, and that despite such notice, WGS took no steps to unsubscribe him. Reaves only alleges "[t]he Plaintiff contacted the Defendant regarding the text messages received," and "[t]he Plaintiff received no response." FAC ¶¶ 26-27.

Plaintiff been able to do so, he would have done so in the FAC. Moreover, Plaintiff cannot plausibly allege that he personally registered his cellphone number on the Registry, nor can he credibly argue that a cellphone qualifies as a "residential telephone" under Section 227(c). The plain language of the TCPA, as well as its statutory history, makes clear that Congress intended to exclude cellular telephones from the scope of "residential" telephone numbers.

For all of the reasons discussed above, this Court should grant WGS's Motion to Dismiss with prejudice.

## C.    MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12.

A defendant may move to strike class allegations before discovery when the complaint shows a class action cannot be maintained on the facts alleged. *Hockenbury v. Hanover Ins. Co.*, No. CIV-15-1003-D, 2016 U.S. Dist. LEXIS 16159, at *5 (W.D. Okla. Feb. 10, 2016) (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Ca. 2009); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) ("Federal courts have used motions to strike to test the viability of a class at the earliest pleading stage of the litigation."). "[N]o class may be certified that contains members lacking Article III standing." *Sanders,* 672 F. Supp. at 991 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). In *Sanders*, the court granted a motion to dismiss and struck class allegations under FRCP 12(f) because the class definition "include[d] all persons within the United States who own a 20–inch Aluminum iMac," which "necessarily include[d] individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages." *Id.* The court explained that "[s]uch individuals

would lack standing to bring these claims." *Id.*

In *Hockenbury*, relying on *Sanders*, the court found that the class definition was overly broad because it included all persons who filed a claim with the defendant, even if they had not suffered an injury or had even benefited from the claim. 2016 U.S. Dist. LEXIS 16159 at \*10. Additionally, the defendant did not provide any objective criteria to separate putative class members to identify those who had suffered an injury. *Id.* The Court found that this overbreadth was a dispositive issue. *Id.* at \*9.

Here, the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from WGS.[10] The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Plaintiff's class definition necessarily includes any individuals who have consented to calls from WGS, and individuals such as Plaintiff, who have not claimed to have registered their number on the Registry. (*See* ECF No. 1, ¶ 29.) Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991; *see also Hockenbury*, 2016 U.S. Dist. LEXIS 16159 at \*10 (finding that the inclusion of insureds that were not injured weighed against a finding that class treatment was appropriate before discovery had commenced).

---

[10] Reaves's proposed Class definition is: "**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one text message advertising Defendant's goods or services from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint." FAC ¶ 33 (emphasis original).

Moreover, Plaintiff does not adequately represent the interests of the putative class as his own telephone number does not constitute a "residential phone number" nor did he, himself, registered his number on the Registry as set forth above.

<h3 style="text-align:center">V.     <u>CONCLUSION</u></h3>

For the foregoing reasons, WGS respectfully requests that this Court grant WGS's Motion and dismiss Plaintiff's claims against it with prejudice. The pleading deficiencies outlined above cannot be corrected with amendment, and thus a dismissal with prejudice is appropriate.

Respectfully submitted,

JACKSON LEWIS P.C.

By:  /s/ Michael DePonte
     Michael DePonte
     OBN 35022
     Michael.DePonte@jacksonlewis.com
     500 N. Akard Street, Ste. 2500
     Dallas, TX 75201
     PH: (214) 520-2400
     FX: (214) 520-2008

**ATTORNEYS FOR DEFENDANT
WORLDWIDE GOLF SHOPS LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of August, 2025, the undersigned counsel filed the foregoing document through CM/ECF system, requesting that the following counsel be served by electronic means:

Matthew D. Alison
OBN 32723
Indian and Environmental Law Group, PLLC
233 S. Detroit, Ste 200
Tulsa, OK  74120
T (918) 347-6169
matthew@iaelaw.com

Anthony I. Paronich, *Subject to Pro Hac Vice*
Paronich Law, PC
350 Lincoln St, Ste 2400
Hingham, MA  02043
T (508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff Paul Reaves, individually and on behalf of a class of all persons and entities similarly situated*

By: */s/ Michael J. DePonte*
　　 Michael J. DePonte