## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAUL REAVES, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) | Civil Action No. 5:25-cv-453-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| WORLDWIDE GOLF SHOPS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>**

# Table of Contents

Introduction.................................................................................................... 1

Background and Standard................................................................................. 2

Argument ........................................................................................................ 3

  I. The Do Not Call List provisions of TCPA § 227(c) protect cell phone subscribers

.......................................................................................................................... 3

    A. The statutory text encompasses "residential telephone subscribers," including

cell phones ……………………………………………………………………………………... 3

    B. Other statutory provisions confirm that reading of § 227(c) ….......................... 6

    C. The FCC's longstanding position is entitled to weight, and every post

McLaughlin case agrees…………………………………………………………… 7

  II. § 227(c)(5) applies to text messages ........................................................ 9

  III. Personal registration on the Do Not Call Registry is not required ................. 14

  IV. Plaintiff has pled a plausible claim for treble damages .................................... 15

  V. Striking class allegations at the pleading stage is premature ............................ 16

  VI. If any deficiency is found, Plaintiff should be granted leave to amend ........... 18

Conclusion ...................................................................................................... 19

# Table of Authorities

**Cases**

Abboud v. Lotta Dough, LLC, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547 (W.D. Tex. Feb. 27, 2025) .............................................................................8

Berman v. Freedom Fin. Network, LLC, 400 F. Supp. 3d 964 (N.D. Cal. 2019).17

Breda v. Cellco Partnership, 934 F.3d 1 (1st Cir. 2019......................................... 13

Cacho v. McCarthy & Kelly LLP, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ....... 2, 4, 5, 6

Callier v. Am.-Amicable Life Ins. Co. of Tex., 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) ............................................................................................. 14

Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) ........................................ 13, 15

CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076 (10th Cir. 2014) ........16

Charvat v. Allstate Corp., 29 F. Supp. 3d 1147 (N.D. Ill. 2014) ............................ 15

Dias v. City & Cnty. of Denver, 567 F.3d 1169 (10th Cir. 2009) ............................ 2

Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) ........................................ 13

Ferrell v. Colourpop Cosmetics, LLC, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. 2025) ....................................................................................................... 8

Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020) …...................................... 13

Hall v. Smosh Dot Com, Inc., 72 F.4th 983 (9th Cir. 2023) ..................................... 13

Heard v. Nationstar Mortg. LLC, 2018 WL 4028116 (N.D. Ala. Aug. 23, 2018) .... 6

Hockenbury v. Hanover Ins. Co., 2016 U.S. Dist. LEXIS 16159 (W.D. Okla. 2016).16

Hulce v. Zipongo, Inc., 132 F.4th 493 (7th Cir. 2025) .................................. .............. 10

Isaacs v. USHealth Advisors, LLC, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025).... 4, 8

Jackson v. Direct Bldg. Supplies LLC, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) .. 4

Jones v. Blackstone Med. Servs., LLC, 2025 WL 2042764 (C.D. Ill. July 21, 2025).11,

Krakauer v. Dish Network, L.L.C., 925 F.3d 643 (4th Cir. 2019) ............................ 10

Lirones v. Leaf Home Water Sols., LLC, 2024 WL 4198134 (N.D. Ohio Sept. 16, 2024) .................................................................................................................... 4

Lyman v. QuinStreet, Inc., 2024 WL 3406992 (N.D. Cal. July 12, 2024) ................... 4

Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014) ........... 12

Marx v. Gen. Revenue Corp., 568 U.S. 371 (2013) ...................................................... 6

McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025) .............…….................................................................................... 2, 7, 12

Meyer v. bebe Stores, Inc., 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ..................... 15

Minter v. Prime Equip. Co., 451 F.3d 1196 (10th Cir. 2006) .................................... 18

Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302 (11th Cir. 2015) ........... 13

Nat'l Cable & Telecom. Ass'n v. FCC, 567 F.3d 659 (D.C. Cir. 2009) ..................... 5

New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) ......................................................... 3

Newman v. SGMS, Inc., 2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2, 2025) .. 8

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) ........................... 5, 10

Radvansky v. Bubolo Med., LLC, 2025 U.S. Dist. LEXIS 158564 (N.D. Ga. Aug. 15, 2025) ........................................................................................................................ 8

Rombough v. Robert D. Smith Ins. Agency, Inc., 2022 WL 2713278 (N.D. Iowa June 9, 2022) .................................................................................................................. 14

Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308 (D. Mass. 2020) .............. 17

**Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533 (2d Cir. 2024)** ................................. **10**

**Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009)** ................... **10, 13**

**Shook v. El Paso Cnty., 386 F.3d 963 (10th Cir. 2004)** ................................. **16**

**Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017)** ............... **13**

**VanderSloot v. Charles Baratta LLC, 2025 WL 1898929 (E.D.N.Y. July 9, 2025)** ... **6**

**Watson v. Integrity Sol. Servs., Inc., 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022)** .. **14**

**Williams v. Myler Disab., LLC, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020)** ................................................................... **12**

**Wilson v. Hard Eight Nutrition LLC, 2025 WL 1784815 (D. Or. June 27, 2025)** ..**4, 8**

**Wilson v. Skopos Fin., LLC, 2025 WL 2029274 (D. Or. July 21, 2025)** ................... **10**

**Zimmer Radio of Mid-Missouri, Inc. v. FCC, 145 F.4th 828 (8th Cir. 2025)** ........... **12**

## Statutes

**47 U.S.C. § 227(a)(2)(A)** ................................................................ **4**

**47 U.S.C. § 227(a)(4)** ................................................................ **3, 10**

**47 U.S.C. § 227(b)** ................................................................ **6, 10**

**47 U.S.C. § 227(c)** ................................................ **1, 3, 4, 6, 7, 9, 10, 18**

**47 U.S.C. § 227(c)(1)** ................................................ **3, 6, 7, 10, 12**

**47 U.S.C. § 227(c)(3)** ................................................................ **1**

**47 U.S.C. § 227(c)(5)** ................................................................ **9, 15**

**28 U.S.C. § 1332** ................................................................ **18**

**Regulations**

47 C.F.R. § 64.1200(c)(2) ........................................................................ 14

47 C.F.R. § 64.1200(e) ........................................................................ 1, 3, 9

47 C.F.R. § 64.2305(d) ........................................................................ 4

**Legislative Materials**

Pub. L. No. 102–243, 105 Stat. 2394, § 2 ......................................... 4

Pub. L. No. 108–10, 117 Stat. 557 (2003) ......................................... 6

TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019) ......................................... 12

## Introduction

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff is one of them. So, when Defendant Worldwide Golf Shops, LLC sent him telemarketing texts in violation of the FCC's rules, he brought this lawsuit to vindicate those rights and put a stop to Worldwide Golf's unwelcome and intrusive marketing practices.

Worldwide Golf has now filed a Motion to Dismiss, and it's one that makes a big ask of this Court. The Supreme Court recently held that courts are not automatically

bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Worldwide Golf therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls to landline phones, upending protections for potentially hundreds of millions of Americans.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. Worldwide Golf asks this Court to substitute its judgment for Congress's and the FCC's largely because most "residential" phones were still landlines in 1991, and text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

Similarly, the Defendant's arguments that personal registration is required for a National Do Not Call Registry Claim, that the class allegations should be stricken based on an affirmative defense not yet pled and that the Plaintiff's Amended Complaint pleads no plausible way that damages could be trebled should be dismissed, as the vast majority of other Courts have done when considering these issues at the pleading stage.

At minimum, Plaintiff should be granted leave to amend to add claims under the Oklahoma Telephone Solicitation Act of 2022 ("OTSA"), Okla. Stat. tit. 15 §§ 775C.1–

775C.6, which independently prohibits the conduct at issue and clearly ties to cellular telephones and explicitly prohibits text messaging conduct.

## Background and Standard

Plaintiff is an Oklahoma consumer whose personal cell number has been on the National Do Not Call Registry since 2017. See ECF No. 21 ¶¶ 17, 25, 29. Between December 2023 and April 2024, Defendant sent at least three telemarketing texts to that number without consent. *Id.* Plaintiff brings § 227(c) claims on behalf of a similarly situated class.

Dismissal is a "harsh remedy" that must be "cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## Argument

### 1. *The Do Not Call List provisions of TCPA § 227(c) protect cell phone subscribers.*

#### a. **The text of § 227(c) makes clear that "residential telephone subscribers" includes cell phone subscribers.**

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call

List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes, subject to certain exceptions. *Id.* Solicitations to cell phones fit that definition. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). Congress's use of the word "transmitted" also conveys no preference: "Transmit" means "to send a signal *by radio waves or by wire*." Transmit, Webster's College Dictionary (1991) (emphasis added). And Congress's use of the word "message" also suggests that Congress had no particular technology in mind: "Message" means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to another." Black's Law Dictionary, 6th Ed. (1991) (emphasis added). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion.

For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024). So a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*;

*Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025).

That leaves the word "residential," which Worldwide Golf's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So the word "residential" refers to the purposes for which a phone is used, not its physical characteristics or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5–7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *accord Isaacs*, 2025 WL 2268359 at *2; *Wilson*, 2025 WL 1784815, at *5; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Mr. Reaves, fit that description.

The TCPA's text and FCC regulations establish that meaning of the word "residential." That's how Congress used the word "residential" in the TCPA's statutory findings, which noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added). The current text of the TCPA, as amended in 2005, also contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A).[1] And FCC regulations dating back

---

[1] *See* Junk Fax Prevention Act of 2005, Pub. L. No. 109–21, 119 Stat. 359, § 2.

to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999).

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Wilson*, 2025 WL 1784815, at *6 (quoting 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024).

Worldwide Golf counters that "residential telephone" must refer exclusively to a landline phone that is physically connected with a house. That's incorrect. Worldwide Golf relies on dictionary definitions, but those don't provide the support it claims. Worldwide Golf says that "residential" means "of, relating to, or connected with" a residence, and that "residence" means, essentially, a "house" or "home." So "residential" means "related to home." True enough. But that's unilluminating. Related to home *how*, exactly? The ordinary meaning of "residential" doesn't, as Worldwide Golf contends, require a *physical* connection; simply "relating to" home in the more general sense is plenty. Here, context establishes that "Congress used the term 'residential' in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206.

Nor does it matter that nearly all residential phones would have been landlines in 1991. Courts look to the meaning of the words Congress used, not the "particular manifestation of a problem" that was front of mind at the time. *Nat'l Cable & Telecom. Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."). So even if nearly all residential telephones were landlines in 1991, that doesn't mean anything turns on the presence of a physical wire. *See Cacho*, 739 F. Supp. 3d at 205.[2]

Moreover, if imposed on the statute today, a landline-only interpretation would have disruptive consequences. Notably, the existing Do Not Call List database contains hundreds of millions of numbers, with no way to tell which are cell phones. *Cacho*, 739 F. Supp. 3d at 203–04 & n.5. So Worldwide Golf's interpretation would likely require "jettisoning the existing database to start anew," upending protection for millions, including landline subscribers who indisputably belong on the list. *Id*.

Worldwide Golf points out that in a different part of the TCPA, it restrictions on autodialer and robocall technology in § 227(b), the statute uses the words "cellular

---

[2] Even in 1991, an interpretation that hinged on the involvement of wires would have been strange. Cordless phones were already in widespread use by 1991. *See* Peter Kerr, Cordless Phones Catching On, New York Times (Feb. 16, 1983), https://www.nytimes.com/1983/02/16/garden/cordless-phones-catching-on.html.   And even traditional landline providers were regularly using wireless technology to transmit long-distance calls back then; for example, AT&T transmitted most landline calls from Hawaii to the mainland U.S. by satellite in the 1980s. *See Inquiry Into the Policies to be Followed in the Authorization of Common Carrier Facilities to Meet Pacific Telecommunications Needs During the Period 1981-1995*, 47 Fed. Reg. 21868-02.

telephone service," while § 227(c) does not have similar language. "The force of any negative implication, however, depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Here, context refutes Worldwide Golf's negative inference, because § 227(b) and § 227(c) have a "markedly different scope and structure." *Wilson*, 2025 WL 1784815, at *4; *VanderSloot v. Charles Baratta LLC*, No. 24-cv-7096, 2025 WL 1898929, at *4 (E.D.N.Y. July 9, 2025). Section 227(b) identifies intrusive telemarketing practices based on the *technologies* involved, while § 227(c) focuses on protecting identified *people* from unwanted solicitations. *See Wilson*, 2025 WL 1784815, at *4; *Isaacs*, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025). That's an obvious reason why "cellular telephones" would be expressly mentioned in § 227(b), but not § 227(c).

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018).

### b.  Other statutory provisions confirm that reading of § 227(c)

Broader statutory context makes Congress's intent even clearer. As cell phones became widespread between the TCPA's enactment in 1991 and the FCC's creation of the national Do Not Call List in 2003, Congress repeatedly legislated in ways that confirmed cellular subscribers were covered. In 1993 and 1996, Congress amended the

Communications Act to clarify that wireless carriers are "common carriers" providing "telephone exchange service," terms that appear in § 227(c) and confirm that wireless subscribers are "subscribers" entitled to protection. See 47 U.S.C. §§ 332(c)(1)(A), 153(54), 227(c)(3)(B), (C). Most decisively, in 2003 Congress enacted the Do Not Call Implementation Act, directing the FCC to harmonize its rules with the FTC's Telemarketing Sales Rule, which expressly applies to "any telephone number," including wireless numbers. Pub. L. No. 108-10, 117 Stat. 557; 16 C.F.R. § 310.4(b)(1)(iii)(B). By instructing the FCC to "maximize consistency" with that rule, Congress ratified the understanding that § 227(c) protects cell phone subscribers.

### c.  If the statute doesn't resolve this, the FCC's longstanding position should and all Courts after *McLaughlin* have agreed.

Since 2003, the FCC has permitted wireless subscribers to register their numbers on the Do Not Call list, expressly finding that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14038 ¶¶ 34–35 (2003). That interpretation is not a recent invention: it reflects a longstanding, consistent view of the FCC that "residential" refers to how a phone is used, not whether it is physically connected to a dwelling. Courts have continued to respect that judgment. See, e.g., *Wilson v. Hard Eight Nutrition LLC*, 2025 WL 1784815, at *5 (D. Or. June 27, 2025); *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025).

Even after *Loper Bright* and *McLaughlin*, this analysis remains unchanged. While automatic *Chevron* deference is gone, Congress expressly delegated to the FCC the task

of adopting the rules "most effective and efficient" to protect subscribers' privacy, 47

U.S.C. § 227(c)(1)(A), (E), and to determine which "common carriers" and "telephone

exchange services" fall within the statute. That delegation shows Congress expected the

FCC to resolve precisely the question presented here. Courts properly continue to treat

the FCC's interpretation as, at minimum, a reasoned judgment entitled to great weight

under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

   Every court to consider this issue since *McLaughlin* has agreed. One court,

denying a stay, put it plainly: "even if the FCC's ruling is not entitled to deference, an

independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*,

No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, at *3 (W.D. Tex. Feb. 27,

2025). Consistent with that reasoning, courts across the country — including in Oregon,

Georgia, Florida, North Carolina, and California — have uniformly held that a cellular

telephone can qualify as a "residential telephone" under § 227(c). See *Wilson*, 2025 WL

1784815; *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7,

2025); *Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal.

2025); *Radvansky v. Bubolo Med., LLC*, 2025 U.S. Dist. LEXIS 158564 (N.D. Ga. Aug.

15, 2025); *Newman v. SGMS, Inc.*, 2025 U.S. Dist. LEXIS 169748 (W.D.N.C. Sept. 2,

2025). This Court should do the same.

### 2. *§ 227(c)(5) applies to text messages*

   To enforce the Do Not Call List, § 227(c) authorizes recipients of unwanted

"telephone solicitations" to sue for violations of the FCC's rules. 47 U.S.C. § 227(c)(5).

In relevant part, that private right of action provision says that suit may be brought by anyone who "has received more than one telephone call within any 12-month period … in violation of the regulations." *Id.*

Worldwide Golf appears to contend that because the private right of action provision uses the word call and because the Do Not Call List provisions do not use the specific terms "text message" or "SMS message," Congress did not intend for the Do Not Call List protections to cover text messages. Worldwide Golf gets the statute wrong. The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

First, Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List.  47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even

if the word "call" alone weren't enough, contemporary dictionary definitions of the word

"message" emphasized that it encompassed *all* sorts of communication, both spoken *and*

written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no

matter the mode and no matter how sent, from one person to another").[3] More generally,

the definition of "telephone solicitation" focuses not on the form of a communication but

whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*,

*Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress presumably referred

to "call or message" disjunctively to broadly capture a wide range of potential

communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that

interpretation. Congress's stated goal was "to protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C.

§ 227(c)(1). And "a voice message or a text message are not distinguishable in terms of

being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin.,*

*LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

To be sure Section 227(c) does not specifically use the words "text messages" or

"SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the

---

[3] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call or message." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated. Section 227(c)(5)'s grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

Worldwide Golf can't dispute that text messages can be sent "in violation of the regulations." 47 U.S.C. § 227(c)(5). The FCC's regulations explicitly say so. *See* 47 C.F.R. § 64.1200(e). Worldwide Golf nevertheless appears to contend that Congress's

use of the word "call" in § 227(c)(5) limits private judicial remedies exclusively to *voice* calls that violate the regulations. That's incorrect.

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[4] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not just to traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers"). And courts have repeatedly reached the same conclusion. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding "that a text message is a 'call' within the TCPA"); *Dawson v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wa. Nov. 13, 2024) (collecting cases).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as

---

[4] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

"telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[5]

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[6] So those uses of the word "call" must have encompassed both voice and text transmissions, too.

Worldwide Golf will likely cite *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025) on reply. But *Jones* is

---

[5] Because § 227(c)(1)(D) confirms that the slight variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation of § 227(c)(5) is unpersuasive. *See Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[6] ***See, e.g.,*** Paging Network, Inc., Annual Report, at 8 (1993)**,** available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4. But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). When there's a mismatch, the contemporary meaning of the text is what controls, not present-day usage. *See id. Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[7] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing *Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665; *Salazar*, 118 F.4th at 550; *Yeskey*, 524 U.S. at 212). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's

---

[7] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of communication in 1991).

unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[8] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding

---

[8] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

interpretation of the word "call" should still carry the day. As previously explained, the

FCC is regulating here with discretionary authority expressly delegated by Congress. *See*

*supra*. Acting under that express delegation, the FCC has reasonably explained that

prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier,"

"eliminate[s] any potential confusion in the industry," and aligns with both its

longstanding determination that cell phone numbers are eligible for protection and the

established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at

12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that

conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603

U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and

consistent interpretation of the word "call" as an "informed judgment to which [it can]

properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

"In addition to the Supreme Court and the FCC, **Congress** has also made clear the

TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-

00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020)

(emphasis added) (citing *Pallone-Thune Telephone Robocall Abuse Criminal*

*Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat

3274 (recognizing that text messages are covered in §227(b) in providing for streamlined

information sharing with the FCC relating to "a call made or a text message sent in

violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019

with the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (the

"TRACED Act"), it adopted the FCC's interpretation, instructing the FCC to prescribe

23

regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 §

227(i)(1)(A) (emphasis supplied). These authorities remain binding and persuasive. They

foreclose Defendant's attempt to carve out text messages from § 227(c)(5) with two out

of circuit authorities, particularly where the statute's remedial purpose is to protect

consumer privacy from invasive solicitations in whatever form they take.

Worldwide is also likely to rely on *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195

(N.D. Fla. Aug. 26, 2025) on reply, in which the court applied the wrong standard of

review, relying instead on *McLaughin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606

U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The

applicable standard is not "appropriate respect" as the *Davis* court held, but instead an

inquiry into whether the FCC acted reasonably and reasonably explained its exercise of

discretion. Such is the case here because Congress instructed the FCC to "initiate a

rulemaking proceeding concerning the need to protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.

Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights"). Indeed, "Congress

vested the FCC with considerable authority to implement the Telephone Act." *Charvat v.

Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress

directed the FCC to "develop proposed regulations to implement the methods and

procedures that the Commission determines are most effective and efficient to accomplish

the purposes of this section." 47 U.S.C. § 227(c)(1)(E); *see also Mais v. Gulf Coast

Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) ("Moreover, *Congress has

conferred upon the FCC general authority to make rules and regulations necessary to*

***carry out the provisions of the TCPA***.") (emphasis added). Because the FCC exercised its discretion granted by the statute, the Administrative Procedure Act's deferential arbitrary-and-capricious standard. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) (quoting *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025). Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained.

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which is already on appeal, the court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000

(8th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In short, the Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin*, disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates....We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages.") (citing *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003)); *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communications, such as text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and

Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."). This Court should hold the same.

### 3. *Personal Registration on the Do Not Call Registry is not Required*

Defendant's reliance on *Rombough v. Robert D. Smith Insurance Agency, Inc.,* 2022 WL 2713278 (N.D. Iowa June 9, 2022), is misplaced and out of step with the weight of authority. The FCC's rule permits a "residential telephone subscriber" to register "his or her telephone number," and once listed, the registration remains effective indefinitely unless cancelled or removed by the administrator. 47 C.F.R. § 64.1200(c)(2). Nothing in the statute or regulations requires that the current user personally perform the registration to invoke DNC protections. Courts have repeatedly rejected efforts to impose such a "name-on-the-bill" or "self-registration only" requirement, explaining that the relevant inquiry is whether the plaintiff is the regular user or subscriber of the called number. See, e.g., *Watson v. Integrity Sol. Servs., Inc.,* 2022 WL 4586407, at 9 (S.D.N.Y. Sept. 29, 2022) ("whether each class member registered their number on the NDNCR is irrelevant"); *Klassen v. Solid Quote LLC,* 2023 WL 7544185, at 4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011); *Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014). The Western District of Texas has been especially clear, characterizing the predicate of *Rombough* as "border[ing] on the frivolous," because DNC entries are phone-number based and persist across time. *Callier v. Am.-Amicable Life Ins. Co. of Tex.,* 2022 WL 17732717, at *5–6 (W.D. Tex. Oct. 18, 2022). This Court should hold the same.

### 4. *The Plaintiff has pled a plausible claim for treble damages*

Treble damages are available where violations are "willful or knowing." 47 U.S.C. § 227(c)(5); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). Courts interpret this standard to require intentional conduct, not knowledge of illegality—i.e., the defendant must knowingly perform the acts constituting the violation. *See Charvat v. Allstate Corp.,* 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014). Plaintiff alleges Defendant deliberately sent multiple marketing texts to his long-registered DNC number without any request or consent. Those facts readily permit an inference of willfulness at this stage, and courts routinely deny Rule 12 motions on similar (or thinner) allegations. *See Meyer v. bebe Stores, Inc*., 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015). Any dispute about intent is a fact question for discovery, not a pleading defect.

### 5. *Striking Class Allegations related to an affirmative defense without discovery is premature.*

Motions to strike class allegations at the pleading stage are "particularly disfavored" and an "extreme remedy," granted only when it is clear from the face of the complaint that Rule 23 can never be satisfied. *Hockenbury v. Hanover Ins. Co.*, 2016 U.S. Dist. LEXIS 16159, at 6–7 (W.D. Okla.). The Tenth Circuit likewise emphasizes that commonality and predominance turn on evidence about defendant's practices, not speculation at Rule 12. See *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087–89 (10th Cir. 2014) (predominance satisfied where common proof can establish liability elements); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (commonality focuses on questions apt to generate common answers).

Defendant's consent argument is no basis to strike now. Consent is an affirmative defense that rises or falls on uniform sources of proof—Defendant's own records (e.g., web forms, point-of-sale intake, third-party lead files), disclosures, and any standard opt-in process it claims to have used. Courts routinely deny early strike motions in TCPA cases for this reason. See *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020) (premature to strike before discovery into consent evidence); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019) (consent manageable where records are centralized and policies uniform). Here, Plaintiff alleges a single marketing campaign of unsolicited texts sent to numbers on the National DNC. Whether those messages were telemarketing, whether Defendant contacted residential numbers, and whether any purported "consent" was valid under the FCC's rules are common questions answerable with classwide proof from Defendant's systems and vendors.

The proposed class is also objectively defined and administratively feasible using Defendant's outbound messaging logs (who received the texts) and any consent artifacts (who purportedly opted in, when, and how). That approach avoids any "fail-safe" formulation—membership does not depend on a merits ruling—and aligns with Rule 23's manageability concerns. See *CGC Holding*, 773 F.3d at 1093 (manageability assessed with the evidentiary record, not at the pleading stage).

**6. *If the Court is inclined to grant the motion, the Plaintiff should be permitted leave to Amend.***

29

If the Court identifies any pleading deficiency, leave to amend is warranted under Rule 15's liberal standard. See *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (leave should be "freely" given absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility). None applies here at this early stage. Moreover, amendment to add a claim under the Oklahoma Telephone Solicitation Act of 2022 ("OTSA"), Okla. Stat. tit. 15 §§ 775C.1–775C.6, would not be futile and would preserve federal jurisdiction under 28 U.S.C. § 1332: Plaintiff is an Oklahoma citizen; Defendant is an LLC with citizenship outside Oklahoma; and the amount in controversy is easily met given OTSA's $500 (up to $1,500 willful) statutory damages and Plaintiff's allegations of repeated, class-wide texts. The Tenth Circuit confirms that the § 1332 threshold is satisfied where "a factfinder might legally conclude" damages exceed $75,000, including through statutory penalties and class claims. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247–48 (10th Cir. 2012). Leave to amend should therefore be granted in the alternative.

## Conclusion

Worldwide Golf asks this Court to upend decades of precedent and deprive millions of consumers of protections Congress mandated and the FCC has long enforced. Plaintiff's Amended Complaint states a straightforward claim: his personal cell phone, registered on the National Do Not Call Registry, received multiple unsolicited telemarketing text messages from Defendant without his consent. That is exactly what § 227(c) forbids.  The motion to dismiss should therefore be denied.

Dated: September 6, 2025

/s/ Anthony I. Paronich
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Matthew Alison, OBA 32723
Indian and Environmental Law Group, PLLC
233 S. Detroit, STE 200
Tulsa, OK 74120
Tel: (918) 347-6169
matthew@iaelaw.com