# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAUL REAVES, individually and on behalf of all persons and entities similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 5:25-CV-00453-JD |
| WORLDWIDE GOLF SHOPS LLC, | § § § | |
| Defendant. | § | |

## DEFENDANT WORLDWIDE GOLF SHOPS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, STRIKE CLASS ALLEGATIONS AND BRIEF IN SUPPORT

Defendant Worldwide Golf Shops LLC files this Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Reply"). WGS's Reply is filed in support of its Motion [ECF No. 23] and addresses Plaintiff Paul Reaves's Opposition to Defendant's Motion to Dismiss ("Response") [ECF No. 27].[1]

## I.  INTRODUCTION

WGS respectfully requests the Court to independently interpret the TCPA under ordinary principles of statutory interpretation, as directed by the Supreme Court in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), and to join a growing consensus of courts, post-*Mclaughlin*, that have concluded that Section 227(c) of the TCPA does not apply to text messages.

Plaintiff's characterization of WGS's position as a "big ask" that would "upend protections for potentially hundreds of millions of Americans" is hyperbolic and unfounded. *See* Response, pp. 6-7. Indeed, WGS is not the type of defendant that the TCPA was enacted to police. WGS does not engage in unscrupulous telemarketing practices; rather, it contacts individuals who have requested communications and provided consent. This includes the prior subscriber of the phone number at issue, who registered the number on the Registry in 2017 and later consented to be contacted by WGS in 2020.

Likewise, Plaintiff is also not a prototypical TCPA claimant. In his FAC, Plaintiff does not—and cannot—allege that he registered the number on the Registry after it was reassigned to him. Instead, he seeks to rely on the prior subscriber's registration while

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

simultaneously preventing WGS from relying on that same subscriber's consent. This is not the scenario Congress had in mind when enacting the TCPA—and stretching the statute to cover such a scenario would undermine its core purpose.[2]

## II.   ARGUMENT

### A. Courts Recently Applying *McLaughlin* Have Held that Section 227(c) of the TCPA Does Not Apply to Text Messages.

Throughout the Response, Plaintiff relies extensively on prior FCC guidance and case law decided in reliance on such guidance—guidance that predates one or both of the Supreme Court's decisions in *McLaughlin* (June 20, 2025) and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (June 28, 2024). These decisions fundamentally reshaped the judicial approach to agency interpretations, and Plaintiff's reliance on outdated FCC positions and corresponding precedent is therefore misplaced.

As the Court made clear in *McLaughlin*, district courts "must determine the meaning of the law under ordinary principles of statutory interpretation," rather than defer to agency views. *McLaughlin*, 606 U.S. 146 at 155. Applying this framework, courts in both the Central District of Illinois (July 21, 2025) and the Northern District of Florida (August 26, 2025) have independently interpreted Section 227(c) and its implementing regulations, concluding that the provision does not apply to text messages.

In *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 U.S.

---

[2] Plaintiff's counsel and others in the plaintiff's bar have filed hundreds of similar TCPA lawsuits in recent years, raising legitimate concerns about serial litigation and overextension of the statute. This pattern underscores the need to interpret the TCPA consistent with its original purpose: to protect consumers from genuine harm—not to encourage opportunistic litigation.

Dist. LEXIS 138371 (C.D. Ill. July 21, 2025), the court granted the defendant's motion to dismiss, holding the TCPA's "do-not-call" provision applies only to telephone calls—not text messages. *See Jones*, 2025 U.S. Dist. LEXIS 138371, at *15. The court reasoned the statutory language in Section 227(c) and its implementing regulations consistently refer to "calls," "telephone calls," and "prerecorded voice messages," without any mention of text messages. *Id.* at *12. It further emphasized that Congress enacted the TCPA in 1991—before text messaging was prevalent—and has never amended the statute to include such communications. *Id.* at *13. Thus, under a plain reading, Section 227(c) does not regulate text messages. *Id.*

Moreover, the *Jones* court rejected arguments nearly identical to those advanced by Plaintiff—namely, that prior FCC guidance, when read in conjunction with other statutory provisions and their implementing regulations, supports extending Section 227(c) to text messages. Like Plaintiff, the *Jones* plaintiff relied on several FCC Orders—including the 2003 Order (which Plaintiff primarily cites), as well as FCC Orders from 2012, 2015, and 2016—and pointed to Section 227(b) and its implementing regulation, 47 C.F.R. § 64.1200(e), to argue that text messages fall within the scope of Section 227(c). *See id.*; *compare with* Response at pp. 1, 3-4, 7, 9, 10, 14-15, and 27.[3] The court rejected this

---

[3] Plaintiff also misapplies the negative-implication canon of statutory construction (*expressio unius est exclusio alterius*) by arguing Congress's use of the term "text message" in other sections requires courts to read that term into Section 227(c). *See* Response at p. 23. That is not how statutory interpretation operates. As the Supreme Court has explained, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

argument, emphasizing the cited FCC guidance and related provisions address text messages *only* in the context of Section 227(b), *not* Section 227(c). Consequently, the court declined to extend Section 227(c) beyond its plain language to encompass text messages.

Although the court acknowledged the FCC's prior interpretations of the TCPA interpreting "text messages" as "calls", it ultimately declined to adopt that view. As the court explained: "While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones* at *13. Instead, the court "confined itself to its assigned role" of applying statutory interpretation and concluded that text messages are not covered by Section 227(c), stating: "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id.* at 14–15.

Decided nearly a month after *Jones*, the Northern District of Florida in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025), likewise held a text message is not a "telephone call" within the meaning of Section 227(c)(5) and accordingly dismissed the plaintiff's TCPA claim. *See Davis*, 2025 U.S. Dist. LEXIS 167366, at *2, *10. The court emphasized that "no ordinary person would think of a text message as a 'telephone call,'" and found "[t]his conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id.* at *3. Moreover, like the court in *Jones*, the *Davis* court rejected the plaintiff's reliance on FCC guidance and broader statutory language found in

other sections of the TCPA. *Id.* at *3.

Oddly, Plaintiff attempts to distinguish *Davis* by claiming it uses the "wrong standard of review" and then proceeds to invent a new standard that directly contradicts the Supreme Court's express mandate. *See* Response, pp. 25-26. As an initial matter, a "standard of review" is the amount of deference given when reviewing a decision of a lower tribunal—not the process a district court must apply when evaluating statutory text. And, in any event, *McLaughlin* explicitly removed the requirement that courts give deference to the FCC's interpretation of the TCPA. Moreover, the court in *Davis* addressed and corrected the plaintiff's misstatement of *McLaughlin* and correctly applied the Supreme Court's directive, stating "the District Court should interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. 146 at 152. The court further noted "appropriate respect" can be provided "**without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text**." *Id.* at *9 (emphasis added).

Lastly, Plaintiff cites *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. July 21, 2025), to argue text messages are indistinguishable from voice calls in terms of privacy invasion and should therefore be covered under Section 227(c).[4] However, *Skopos* involved claims under Section 227(b), not Section 227(c), and its reasoning was grounded in the FCC's longstanding interpretation of "call" in the autodialer context. Unlike *Jones* and

---

[4] Plaintiff also cites to *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 949 (9th Cir. 2009) in support; however, it predated *McLaughlin* by 16 years and addresses Section 227(b).

*Davis*, which directly addressed the scope of Section 227(c)(5), *Skopos* did not analyze whether the Do Not Call provisions apply to text messages. Accordingly, it provides no persuasive authority for extending Section 227(c) beyond its plain language.

Together, *Jones* and *Davis* reflect a growing judicial consensus that Section 227(c) does not extend to text messages, particularly in light of the Supreme Court's directive to interpret statutes based on their plain meaning.[5] In turn, WGS respectfully requests the Court follow the reasoning provided by the courts in *Jones* and *Davis* to reach the same result, which is a sufficient basis to dismiss Plaintiff's claims in their entirety.

**B. Even if Section 227(c) of the TCPA Applies to Text Messages—Which It Does Not—Plaintiff Has Not and Cannot Allege Personal Registration on the Registry Because This Is a Reassigned Number Case.**

Plaintiff's Response notably fails to dispute that he did not personally register his telephone number on the Registry. Nor does he allege personal registration in either his Complaint or FAC because he cannot—this is a reassigned number case.

Rather than addressing this deficiency directly, Plaintiff relies on factually distinguishable cases to argue personal registration is unnecessary for individual standing or class representation. That argument is contrary to the plain language of the governing regulation. Under 47 C.F.R. § 64.1200(c)(2), "[n]o person or entity shall initiate any telephone solicitations . . ." to "a residential telephone **subscriber *who has registered his or her telephone number* on the national do-not-call registry** . . . ." (emphasis added).

---

[5] As further addressed in the Motion, *McLaughlin* also requires the Court to independently interpret the plain meanings of other terms found in the TCPA—including whether cellular telephones are "residential" under Section 227(c). *See* Motion, pp. 5-15.

The regulation unambiguously requires that the *subscriber*—not a prior user—personally register his or her number.

This interpretation aligns with the Supreme Court's directive in *McLaughlin* to apply ordinary principles of statutory interpretation and is also supported by the reasoning in *Rombough v. Robert D. Smith Insurance Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614 (N.D. Iowa June 9, 2022) (holding that a plaintiff must personally register their number to invoke the protections of Section 227(c)).

The facts here underscore the issue. The prior subscriber registered the number in 2017 and later provided consent to receive communications from WGS in 2020. Plaintiff asserts he subsequently acquired the number but never registered it himself. Plaintiff's pleadings conspicuously omit any allegation of personal registration and gloss over the reassignment—in an apparent attempt to manufacture standing under the TCPA.

None of Plaintiff's cited cases support the proposition that personal registration is not required, and, accordingly, Plaintif's reliance on these cases is misplaced. In fact, in each case cited, the plaintiff had personally registered their number. For example, in *Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572, 2022 U.S. Dist. LEXIS 178069 (S.D.N.Y. Sept. 29, 2022), "the only proffered representative plaintiff for this class . . . testified [] he registered with the [Registry.]" *Watson*, 2022 U.S. Dist. LEXIS 178069, at *17; *see also Isaacs v. USHEALTH Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *1 (N.D. Ga. Aug. 7, 2025) ("Plaintiff registered his

cell phone number on the national do-not-call registry . . . .").[6] Similarly, in *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023), the original proposed class definition included "All persons in the United States where: (1) the person's telephone number was registered on the National Do-Not-Call-Registry 30 or more days." *Klassen*, 702 F. Supp. 3d 1052 at 1055. However, the court modified subdivision (1) to require that "'the person's telephone number was registered **by the person** on the National Do-Not-Call Registry 30 or more days.'" *Id.* at 1059 (emphasis added). Such a class modification, here, would disqualify Plaintiff as a member of the class and would otherwise require dismissal as he, himself, did not personally register his number on the Registry.[7]

Plaintiff's reliance on *D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 624 (N.D. Ill. 2011) and *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1223 (S.D. Cal. 2014) is also misplaced as these cases do not even contemplate the Registry or the regulation's express requirement for personal registration; instead, they address claims under different sections of the TCPA, and not 227(c).

Finally, Plaintiff's reliance on *Callier v. Am.-Amicable Life Ins. Co. of Tex.*, No. EP-22-CV-00018-FM, 2022 U.S. Dist. LEXIS 228176 (W.D. Tex. Oct. 18, 2022) lacks context that makes it wholly distinguishable. In *Callier*, the Court summarily found that

---

[6] Plaintiff incorrectly cites the *Watson* case as "*Watson v. Integrity Sol. Servs., Inc.*, 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022)." *See* Response, p. 27.

[7] Plaintiff's proposed class definition includes "All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days." *See* FAC ¶ 33. As further set forth in the Motion, Plaintiff's class allegations should be stricken as the definition is facially over broad. *See* Motion, pp. 20-22.

"[w]hile it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the [Registry] . . . a supremely reasonable inference . . . is that he did the registering." *Callier*, 2022 U.S. Dist. LEXIS 228176, at *14. Here, Plaintiff does not and cannot dispute the "particularly unlikely" situation contemplated in *Callier*: the prior subscriber registered the number, and it was subsequently reassigned. Plaintiff notably ignores the Court's inference in Callier that plaintiff has personally registered his number on the Registry.

In sum, Plaintiff's argument is unavailing. None of the cited cases support his position. By contrast, both *McLaughlin* and *Rombough* confirm that Plaintiff's failure to personally register his number on the Registry is fatal to his TCPA claim.

## C. Leave to Amend a Second Time Should Be Denied as Unduly Prejudicial and Futile.

Plaintiff's request for leave to amend should be denied for two independent reasons. First, Plaintiff has already amended his Complaint once in response to WGS's original motion to dismiss [ECF No. 20], yet the FAC still fails to remedy the substantive deficiencies previously identified. Second, Plaintiff's attempt to now assert a claim under the Oklahoma Telephone Solicitation Act of 2022 ("OTSA") reflects undue delay and appears to be a tactical effort to salvage a legally deficient TCPA claim.

Courts in the Tenth Circuit routinely deny leave to amend where the movant has already had an opportunity to cure deficiencies and fails to do so, or where the amendment

is sought after undue delay or in bad faith. In *Castleglen, Inc. v. Resolution Trust Corp.*, the Tenth Circuit affirmed denial of leave to amend, emphasizing that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment." 984 F.2d 1571, 1585 (10th Cir. 1993).

Plaintiff's proposed amendment—adding a new state-law, statutory claim under OTSA—comes only after his TCPA claim has been thoroughly challenged and appears to be a tactical attempt to sidestep dismissal. This type of maneuvering is precisely the kind of undue delay and bad faith that courts in this Circuit have found to warrant denial.

Moreover, Plaintiff's proposed amendment would be futile, as it would be subject to dismissal for failure to state a claim. The OTSA prohibits the use of autodialing systems, restricts calls made before 8:00 a.m. or after 8:00 p.m., and prohibits calls that conceal caller identification. *See* OTSA § 775C.3-4. It also bars a commercial telephone seller from making three or more solicitations within a twenty-four-hour period. *See* OTSA § 775C.4(A)(2). None of these provisions apply here: the text messages were sent based on the prior subscriber's consent, not via autodial; they were sent between 12:45 p.m. and 4:15 p.m.; and they were spread over several months—not clustered within a single day. Accordingly, Plaintiff's proposed OTSA claim would not survive a motion to dismiss.

### III.   CONCLUSION AND PRAYER

For the reasons set forth above and as otherwise set forth in the Motion, WGS respectfully requests the Court grant the Motion and dismiss Plaintiff's claims with prejudice. WGS furthers requests such other and further relief to which it may be entitled.

                                Respectfully submitted,

                                JACKSON LEWIS P.C.

By:  /s/ Michael DePonte
       Michael DePonte
       OBN 35022
       Michael.DePonte@jacksonlewis.com
       500 N. Akard Street, Ste. 2500
       Dallas, TX 75201
       PH: (214) 520-2400
       FX: (214) 520-2008

**ATTORNEY FOR DEFENDANT
WORLDWIDE GOLF SHOPS LLC**

## CERTIFICATE OF SERVICE[8]

      I hereby certify that on the 15th day of September, 2025, the undersigned counsel filed the foregoing document through CM/ECF system, requesting that the following counsel be served by electronic means:

| | |
|---|---|
| Matthew D. Alison<br>OBN 32723<br>Indian and Environmental Law Group, PLLC<br>233 S. Detroit, Ste 200<br>Tulsa, OK 74120<br>T (918) 347-6169<br>matthew@iaelaw.com | Anthony I. Paronich, *Subject to Pro Hac Vice*<br>Paronich Law, PC<br>350 Lincoln St, Ste 2400<br>Hingham, MA 02043<br>T (508) 221-1510<br>anthony@paronichlaw.com |

*Attorneys for Plaintiff Paul Reaves, individually and on behalf of a class of all persons and entities similarly situated*

                              By:  */s/ Michael J. DePonte*
                                    Michael J. DePonte

4924-3878-5641, v. 1

---

[8] Pursuant to LCvR7.1(e), Cover Pages, Signature Blocks, and Certificates of Service do not count towards any page limitations.

---