# EXHIBIT 1

**JacksonLewis**

**Jackson Lewis P.C.**
500 N. Akard St., Suite 2500
Dallas, Texas 75201
(214) 520-2400 Main
(214) 520-2008 Fax
www.jacksonlewis.com

*Michael J. DePonte*
*Direct: (972) 728-3307*
*Michael.DePonte@jacksonlewis.com*
**Board Certified-Texas Board of**
**Legal Specialization**
**Labor and Employment Law**
**Civil Trial Law**

September 25, 2025

Hon. Judge Jodi W. Dishman
William J. Holloway, Jr. U.S. Courthouse
200 NW 4ᵗʰ St
Oklahoma City, OK  73102

RE:  5:25-cv-00453-JD
Reaves v. Worldwide Golf Shops

To The Honorable Judge Dishman:

Defendant Worldwide Golf Shops LLC ("WGS") provides this letter brief regarding Plaintiff's citation to *Bosley v. A Bradley Hospitality LLC*, No. 25-cv-22336-BLOOM (S.D. Fla. Sept. 18, 2025).  WGS attaches the *Bosely* decision and the underlying pleadings referenced below for the convenience of the Court.

Plaintiff's reliance on *Bosley* is misplaced. In *Bosley*, the defendant moved to dismiss two TCPA claims shortly after the Supreme Court's decision in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025), arguing that the plaintiff (1) lacked Article III standing and (2) consented to receive text messages by replying "No Stop" to a message instructing recipients to text "STOP to end." *See Bosley*, ECF No. 9 at 1–2. Critically, neither the parties nor the court in *Bosley* acknowledged or applied the *McLaughlin* framework, which requires district courts to independently interpret statutes using ordinary principles of statutory interpretation—affording only appropriate respect, not deference, to agency interpretations—a framework that is central to WGS's Motion to Dismiss [ECF No. 23] and Reply [ECF No. 28]. *See Bosley*, ECF No. 9 (no mention of *McLaughlin* in the motion to dismiss), ECF No. 10 (no mention in the response), and ECF No. 18 (no mention in the court's order). Moreover, the *Bosley* Court did not address one of the central undisputed facts in this matter—Plaintiff failed to register his phone number on the Do Not Call Registry.[1] Accordingly, Plaintiff's reliance on dicta from the *Bosley* order—which notably fails to engage with the controlling *McLaughlin* framework—carries no precedential weight and should be disregarded.

---

[1]     Indeed, Plaintiff fails to address this fact in his briefing altogether.

**JacksonLewis**

 

WGS trusts the Court has ample briefing and information to dismiss Plaintiff's First Amended Complaint.

Sincerely,

JACKSON LEWIS P.C.

Michael J. DePonte
Principal

MJD/ef

Attachments

cc      Matthew Alison (matthew@iaelaw.com)
         Anthony Paronich (anthony@paronichlaw.com)

No *Shepard's* Signal™
As of: September 24, 2025 7:25 PM Z

## *Bosley v. A Bradley Hosp. LLC*

United States District Court for the Southern District of Florida

September 18, 2025, Decided; September 19, 2025, Entered on Docket

Case No. 25-cv-22336-BLOOM/Elfenbein

**Reporter**

2025 U.S. Dist. LEXIS 183986 *; 2025 LX 441085

CASSANDRA BONAIR BOSLEY, individually and on behalf of all others Similarly situated Plaintiff, v. A BRADLEY HOSPITALITY LLC d/b/a LA MESA MIAMI, Defendant.

## Core Terms

text message, message, telemarket, entity, advertize, revoke, opt-out, do-not-call, concrete, registry, unwanted, caller, reply, telephone, residential, subscriber, solicit, telephone number, phone number, consumer, register, telephone solicitation, motion to dismiss, express consent, injury in fact, telephone call, make a call, opt

**Counsel: [\*1]** For Cassandra Bonaire Bosley, Individually and on behalf of all others similarly situated, Plaintiff: Andrew John Shamis, LEAD ATTORNEY, Shamis & Gentile P.A., Miami, FL; Scott Adam Edelsberg, Edelsberg Law PA, Aventura, FL.

For A Bradley Hospitality LLC, doing business as, La Mesa Miami, Defendant: Matthew Eric Ladd, LEAD ATTORNEY, Coral Gables, FL.

**Judges:** BETH BLOOM, UNITED STATES DISTRICT JUDGE.

**Opinion by:** BETH BLOOM

## Opinion

## ORDER ON MOTION TO DISMISS AND/OR STRIKE COMPLAINT

**THIS CAUSE** is before the Court upon Defendant Bradley Hospitality LLC's ("Defendant") Motion to Dismiss and/or Strike Complaint. ECF No. [9]. Plaintiff filed a Response in Opposition ("Response"), ECF No. [10]. Defendant did not file a reply. For the reasons that follow, Defendant's Motion to Dismiss and/or Strike Complaint is denied.

## I. BACKGROUND

This case arises from a series of purportedly unsolicited text messages Defendant sent to Plaintiff as a part of Defendant's marketing campaign. The Complaint asserts the following allegations: Plaintiff is the subscriber and sole user of a residential cellphone number ending in 9198 that was registered and continues to be registered on the national do-not-call registry. ECF No. [1] at ¶¶ 32-34. "Defendant **[\*2]** is a hospitality group that operates a restaurant franchise in Florida." ECF No. [1] at ¶ 3. To promote its business, Defendant relies on telephone sales calls and text messages "with no regard[ ] for consumers' rights under the [*Telephone Consumer Protection Act*]["]TCPA["], even after customers request Defendant to stop texting them." *Id.* at ¶ 34. "At

no point in time [has] Plaintiff provide[d] Defendant with her express written consent to be contacted," nor does Plaintiff have an "existing business relationship with Defendant." *Id.* at ¶¶ 28-30.

Beginning on December 11, 2024, Defendant "sent multiple telemarketing text messages to Plaintiff's cellular telephone number ending in 9198, from Defendant's 786-746-9484 number." *Id.* at ¶¶ 13, 21.[1] After receiving several of these telemarketing[2] messages, Plaintiff responded to Defendant on January 2, 2025, "with the message 'No stop,' using standard opt out language, in an attempt to opt-out of any further text message communications with Defendant." *Id.* at ¶ 14. Notwithstanding Plaintiff's opt-out request, Defendant continued to bombard Plaintiff with more unwanted text messages until at least March 2025. *Id.* at ¶ 15. During that time, Plaintiff sent additional opt-out [*3] text messages, but to no avail. *See id.* at ¶ 16. Although Defendant had the "capability of immediately complying with opt-out requests, . . . Defendant fai[led] to ensure that requests by Plaintiff . . . to opt-out of future communications [were] honored within a reasonable time." *Id.* at ¶¶ 17-18. Specifically, Defendant does not "maintain a master optout list" or "maintain internal polices to sufficiently honor the opt-out requests[.]" *Id.* at ¶ 19.

Plaintiff alleges that "Defendant's unwanted telemarketing text messages caused Plaintiff

actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id.* at ¶ 37. Specifically, Plaintiff alleges that each message caused her to stop what she was doing to review the message, wasting fifteen to thirty seconds reviewing each message. *Id.* at ¶ 38.

Based on the alleged misconduct, Plaintiff filed a Complaint asserting two separate Telephone Communication Protection Act ("TCPA") claims. Count I alleges that Defendant "violated *47 U.S.C. § 227(c)(5)* because Plaintiff received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of *47 C.F.R. § 64.1200[(c)]*, which prohibits an entity [*4] from "initiating, or causing to be initiated telephone solicitations to telephone subscribers such as Plaintiff . . . who registered their respective telephone numbers on the National Do Not Call Registry." *Id.* at ¶¶ 57-58. Count II alleges that Defendant violated *47 U.S.C. § 227(c)(5)* because Defendant sent messages to Plaintiff despite not having "instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf [of Defendant], pursuant to *47 C.F.R. § 64.1200(d)*," and after Plaintiff had made requests to Defendant not to receive calls from Defendant." *Id.* at ¶¶ 66-67.

## II. LEGAL STANDARD

### A. Article III Standing

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." *U.S. Const. Art. III § 2*; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc., 524 F.3d 1229, 1232 (11th Cir. 2008)*. For a case or controversy to

---

[1] Plaintiff alleges none of these messages were for an emergency purpose or to collect a debt. ECF No. [1] at ¶ 27.

[2] According to Plaintiff, "Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's restaurant and entertainment services." ECF No. [1] at ¶ 22. Specifically, the "information contained in the text message[s] advertise[ ] Defendant's various discounts and promotions, which Defendant sends to promote its business." *Id.* at ¶ 23.

2025 U.S. Dist. LEXIS 183986, *4

exist, the Plaintiff must have standing to bring the action. *See* *I.L. v. Alabama, 739 F.3d 1273, 1278 (11th Cir. 2014)* ("Standing is one of the Article III case or controversy requirements."). "To have standing, the plaintiff[] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See* *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd., 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020)*. "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc., 964 F.3d 990, 996 (11th Cir. 2020)* (quoting *Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 99, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*). "An injury in fact is 'an invasion of a legally protected interest [*5] which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *I.L., 739 F.3d at 1278*; *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.'" *Trichell, 964 F.3d at 996* (quoting *Spokeo, Inc. v. Robins, 578 U.S. 330, 340, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if it is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sci. Center, Inc., 737 F. Supp. 3d 1314, 2024 WL 3051320, at *5 (M.D. Fla. 2024)*. A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. *Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008)* (quoting *Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d*

*895 (1979)*).[3]

## B. Failure to State a Claim for Relief

"On a *Rule 12(b)(6)* motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014)* (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA, No. 09-495, 2010 U.S. Dist. LEXIS 95091, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)*). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*; *see* *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (explaining that *Rule 8(a)(2)*'s pleading standard "demands more than an unadorned, the defendant-     unlawfully-harmed-me accusation"). [*6] Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 557* (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly, 550 U.S. at 570*). "Factual allegations must be

---

[3] "*Merriam-Webster* defines 'imminent' in its online dictionary to mean 'ready 'to take place'; *especially*: hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent." *See* *Taylor v. Fred's, Inc., 285 F. Supp. 3d 1247, 1259 (N.D. Ala. 2018)*.

enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under *Rule 12(b)(6)*, the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc., 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019)*. In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006)*.

## III. DISCUSSION

Defendant asserts several arguments to support dismissing Plaintiff's Complaint. Defendant explains that "[t]he allegations before the court are that the text messages sent [by Defendant] qualify as an 'advertisement' without express consent in violation of *47 CFR 64.1200*." ECF No. [9] at 5-6. However, Plaintiff "does not and cannot establish Article III Standing" to assert her TCPA claims because the text messages Defendant **[*7]** sent to Plaintiff were not "advertisements." *Id.* at 5. According to Defendant, the "TCPA defines 'advertisements' as any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at 6. Defendant claims the content of the seven messages it sent were as follows: (1) the first text messages "merely announces that there is [a] movie night and comedy without providing a date, time, or price;" (2) the second text messages is the same announcement as the first but does not contain a "call to action; (3) "[t]he third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP

clients;" and (4) "[t]he last four texts are also merely announcements without any 'call to action.'" *Id.* at 5. Accordingly, because the "seven text messages do not specify the availability or quality of the 'shows' being advertised," Defendant argues the messages are "not 'advertisements'" but mere informational messages. *Id.* at 6.

Defendant further argues that Plaintiff has failed to allege a concrete injury as a result of the text messages because merely alleging "actual harm," "invasion of privacy," and "annoyance" are too conclusory **[*8]** to establish a concrete injury. *Id.* Moreover, Defendant maintains that taking a few seconds to read a few small text messages over the span of months is insufficient to constitute a concrete harm. *Id.*

Lastly, Defendant addresses Plaintiff's allegation that she "responded to Defendant's 786-746-9484 number with the message 'No stop,' using standard opt-out language, in an attempt to opt-out of any further text message communications with Defendant." ECF No. [1] at 3. According to Defendant, the phrase "No stop" does not amount to an "unequivocal opt-out request." *Id.* at 4. Defendant points out that pursuant to *47 C.F.R. § 64.1200(a)(10)*:

> A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to *paragraphs (a)(1) through (3)* and *(c)(2)* of this section by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or

"unsubscribe" sent in reply to an incoming text message;.... If a called party uses any such method **[\*9]** to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent.

While Defendant acknowledges that the regulation provides that texting the word "stop" is an appropriate means of opting out of unwanted text message solicitations, Defendant argues that "No stop" is not. According to Defendant, that is especially the case here, where Plaintiff concedes she was specifically "directed to type 'STOP to end' if she wanted the text messages to stop," but instead said "No stop." ECF No. [9] at 7. Defendant contends that under the circumstances, "No stop" reasonably conveyed to Defendant that it not stop, "but rather continue." *Id.* Accordingly, "Plaintiff's directive to Defendant" not to stop "implied to Defendant an express consent to 'keep going' or continue providing the text messages." *Id.* Defendant therefore insists that this express **[\*10]** consent to receive subsequent messages "precludes the Plaintiff's recovery." *Id.*[4]

Plaintiff responds that Defendant's standing argument "relies on outdated case law and ignores unfavorable, but controlling, Eleventh Circuit precedent." ECF No. [10] at 2. Plaintiff argues that "a plaintiff who receive[s] 'a *single*

unwanted, illegal telemarketing text message suffere[s] a concrete injury.'" *Id.* (quoting *Drazen v. Pinto, 74 F.4th 1336, 1339 (11th Cir. 2023)* (emphasis added by Plaintiff)). Therefore, because Plaintiff has alleged that "Defendant sent or caused to be sent," more than one unwanted telemarketing text message to Plaintiff's 9198 Number, she has adequately alleged a concrete injury in fact. *Id.* at 6.

Regarding Defendant's argument that the text messages were not "advertisements," Plaintiff contends the argument is irrelevant because "neither cause of action alleged by Plaintiff (violations of *47 C.F.R. § 64.1200(c)* and *(d)*) even alleges the text messages were advertisements but instead argue that the messages constitute "telephone solicitations" and "telemarketing." *Id.* at 3. As such, any failure to establish that the text messages were advertisements is not dispositive.

Plaintiff also disputes the notion that her text stating "'No stop' in **[\*11]** response to [the] 'STOP to end' [messages from Defendant] was an expression of consent to the messages." *Id.* According to Plaintiff, such an interpretation of her messages "defies not only logic, but also the text of *47 C.F.R. § 64.1200(a)(10)*, which provides that prior express consent may be revoked 'by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender.'" *Id.* Plaintiff maintains that her "No stop" messages constituted a reasonable and unambiguous desire for Defendant to cease sending further text messages.[5] Moreover, even assuming they did not, "Plaintiff's Complaint establishes that she never provided prior express consent to be called or texted by

[4] While Defendant characterizes his Motion in part as a motion to strike, Defendant makes no argument in favor of striking any portion of the Complaint. *See generally* ECF No. [9].

[5] Plaintiff also notes that while Defendant's Motion purports to also be a motion to strike, Defendant fails to identify any portion of the Complaint it seeks to have stricken. *See* ECF No. [10] at 3.

Defendants, that she did not have an established business relationship, and that her 9198 Number was listed on the National Do Not Call Registry." *Id.* at 11. Accordingly, the text messages sent to Plaintiff before her "No stop" messages were "without consent and in violation of *47 U.S.C. § 227(c)(5)* and *47 C.F.R. § 64.1200(c)(2)*." *Id.*

The Court finds that Plaintiff has standing to bring her claims and has adequately stated claims upon which relief may be granted. Defendant's first argument that there is no concrete harm sufficient **[*12]** to establish standing for either claim is without merit. The Eleventh Circuit has stated unequivocally that "the receipt of an unwanted text message causes a concrete injury," thereby providing a plaintiff with standing to bring a TCPA claim. *Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023)*; *see also Eisenband v. Schumacher Auto., Inc., No. 18-CV-80911, 2018 U.S. Dist. LEXIS 181272, 2018 WL 7820549, at *2 (S.D. Fla. Oct. 23, 2018)* (finding allegations of receipt of a single text message sufficient to establish a concrete injury necessary to establish standing). Therefore, because Plaintiff has adequately alleged that Defendant sent her at least one unwanted text message as outlined under the TCPA, she has established Article III standing.[6]

Defendant is also unable to demonstrate that Plaintiff has failed to state a claim upon which relief may be granted. To plausibly assert a TCPA violation under *47 U.S.C. § 227*, "a plaintiff must allege '(1) receipt of more than one telephone call within any 12-month period;

(2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC.'" *Persichetti v. T-Mobile United States, 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020)* (quoting *Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014)*); *Lawson v. Visionworks of Am., Inc., 741 F. Supp. 3d 1251, 1253 (M.D. Fla. 2024)*. There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II, given that a text message constitutes a "call" under the TCPA and the text messages were alleged to have been sent over the course of several months. *See Eldridge v. Pet Supermarket Inc., 446 F. Supp. 3d 1063, 1067-68 (S.D. Fla. 2020)* **[*13]** ("A text message to a cell phone qualifies as a 'call' under the TCPA.") (citing *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, *as revised* (Feb. 9, 2016); *Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014)* (noting that the TCPA and the accompanying federal regulations "apply with equal force to conventional telephone calls and text messages, as a text message qualifies as a 'call' within the meaning of the TCPA."); *Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022)* ("In several rules, the FCC reiterates that the TCPA affords text messages 'the same consumer protections . . . as voice calls.'") (internal quotations omitted). Therefore, Defendant's Motion solely concerns the third element—whether there are allegations sufficient to establish that Defendant's text messages to Plaintiff violated FCC regulations.

Plaintiff asserts two regulatory violations here. In Count I, Plaintiff alleges a violation of *47 C.F.R. § 64.1200(c)*, which "prohibits entities from making 'telephone solicitations' to '[a] residential telephone subscriber who has registered his or her telephone number on the

---

[6] Defendant's argument that Plaintiff's failure to establish that the text messages were advertisements is not a standing argument but rather an argument that Plaintiff has failed to state a claim. As such, the Court will discuss the issue in the failure to state a claim section of the Opinion.

national do-not-call registry." *Lawson, 741 F. Supp. 3d at 1254*. "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . .." *Id.* (quoting *47 C.F.R. § 64.1200(f)(15)*). In the Complaint, Plaintiff alleges that she "registered her phone number with the national do-notcall registry on November 11, 2009, and has been registered at all times relevant to this action." ECF No. [1] at ¶ 34. Additionally, Plaintiff alleges that **[*14]** Defendant sent multiple telemarketing messages to her, encouraging "the future purchase or investment in property, goods, or services," by "promoting Defendant's restaurant and entertainment services." *Id.* at ¶ 22. According to Plaintiff, these messages contained both "discounts and promotions" with the intent to drive customers to Defendant's business. The allegations are sufficient to establish a *§ 64.1200(c)* violation as Plaintiff has adequately alleged that (1) her residential phone number was on a do-nocall registry and (2) she received "telephone solicitations" from Defendant.[7] *See Klassen, v. Protect My Car Admin Servs., Inc., 599 F. Supp. 3d 1243, 1246 (M.D. Fla. 2021)* (finding that allegations that the plaintiff's number was on the Do Not Call Registry and that the defendant subsequently called the plaintiff "for solicitation purposes" was "sufficient to plead a violation of *Section 227(c)*").

Defendant argues that the messages sent to Plaintiff did not violate *§ 64.1200(c)* because they were not advertisements. However, even if true, that fact would not undermine the validity of Plaintiff's TCPA claim. Under *§ 64.1200(c)*, a plaintiff does not need to establish that the messages she received constituted advertisements, but only that they amounted to telephone solicitations. Plaintiff adequately alleges that the text **[*15]** messages were for the purposes of solicitation and thus has adequately alleged a violation of *§ 64.1200(c)*.

Defendant's only other argument regarding Count I is that Plaintiff effectively consented to the text messages because she sent multiple text messages with the words "No stop." The Court need not consider whether the "No Stop" message could reasonably be construed as Plaintiff's affirmative consent to receive additional messages for the purposes of evaluating the sufficiency of Count I. Plaintiff alleges that the first "No stop" message was sent in *response* to Defendant after she had received multiple text message solicitations. *See* ECF No. 1 at ¶¶ 14-15. Therefore, even assuming that Plaintiff's "No stop" message constituted approval by Plaintiff to receive more solicitations, the initial messages from Defendant were necessarily sent to Plaintiff without prior consent or approval.[8] Therefore, because there need only be "more than one" unwanted text message sent to a phone number on the Do Not Call Registry in order to establish a violation, consent to receive subsequent messages does not defeat the claim that Defendant violated *§ 64.1200(c)* when it sent the initial two messages. *See Persichetti, 479 F. Supp. 3d at 1339* (explaining that **[*16]** there simply needs to be more than one unwanted call to establish a TCPA violation).

---

[7] The Court notes that "[c]alls that 'violat[e] the do-not-call requirements' . . . 'need not be automated to violate the regulations.'" *Klassen v. Protect My Car Admin Servs., Inc., 599 F. Supp. 3d 1243, 1245 (M.D. Fla. 2021)*; *Somogyi v. Freedom Mortg. Corp., No. CV 17-6546 (JBS/JS), 2018 U.S. Dist. LEXIS 129697, 2018 WL 3656128, at *4 (D.N.J. Aug. 2, 2018)*).

[8] As Plaintiff points out, the Complaint alleges that Plaintiff never provided any prior consent to receive text messages from Defendant. She did not "express written consent," and she "had no existing business relationship with Defendant." ECF No. [1] at ¶¶ 28,31.

Defendant's arguments regarding Count II are similarly unpersuasive. In Count II, Plaintiff alleges a violation of *47 C.F.R. § 64.1200(d)*, which provides "that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or behalf of that person or entity.'" *Persichetti, 479 F. Supp. 3d at 1338* (quoting *47 C.F.R. § 64.1200(d)*). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 C.F.R. § 64.1200(f)(13)*. The procedures instituted by the party must meet the following standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-notcall list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call **[*17]** requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's

do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call **[*18]** is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

*47 C.F.R. § 64.1200(d)(1)-(4)*.

Plaintiff has adequately alleged that Defendant violated *47 C.F.R. § 64.1200(d)*. There is no dispute that Plaintiff has adequately alleged that she received text messages to her residential[9] phone number from Defendant. Furthermore, Defendant does not challenge or otherwise dispute Plaintiff's allegations that Defendant "failed to maintain a master opt-out list" or that Defendant "does not have a written policy for

---

[9] *See* ECF No. [1] at ¶ 9 (describing her telephone number ending in 9198 as her "residential telephone number").

maintaining an internal do not call list pursuant to *47 [C.F.R.] § 64.1200(d)(1)*." ECF No. [1] at ¶¶ 19-24. Instead, Defendant argues that, notwithstanding those allegations, Count II still fails to state a claim because Plaintiff has not established that the messages Defendant sent were "advertisements," and because Plaintiff **[*19]** acknowledges that she consented to the text messages by responding with text messages saying "No stop."

Defendant's argument that it did not send "advertisements" fails as to Count II for the same reasons the argument failed with respect to Count I. As Plaintiff correctly points out, she alleges that she received "telemarketing" messages from Defendant, not advertisements. The operative regulation, *47 C.F.R. § 64.1200(d)*, does not require that the text messages amount to "advertisements," and therefore, Plaintiff's allegations that the messages were "telemarketing" messages as opposed to "advertisements" is not fatal to her claim. Plaintiff properly alleges that the messages were more than informational and thus constituted "telemarketing" messages as the messages were sent to promote Defendant's restaurant and entertainment services and informed recipients of Defendant's discounts and promotions. *See* *Lawson, 741 F. Supp. 3d at 1254-55* (finding that a message amounted to telemarketing because "[s]imply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message.").

Defendant's final argument concerns the "No stop" text messages Plaintiff sent to **[*20]** Defendant in response to its telemarketing messages. Plaintiff alleges that her repeated text messages to Defendant stating "No stop" were clear directives to Defendant to stop

sending telemarketing text messages to her phone number. As Plaintiff correctly points out, it may be inferred that "internal do-not call procedures are deficient when calls to an individual who has requested not to be called continue." *47 C.F.R. § 64.1200(d)*; *see e.g.,* *Menin v. Star Markets Co. Inc., No. 23-CV-11918-DJC, 2024 U.S. Dist. LEXIS 161422, 2024 WL 4123522, at *3 (D. Mass. Sept. 9, 2024)* (citing *Eagle v. GVG Cap., LLC, No. 22-cv-00638-SRB, 2023 U.S. Dist. LEXIS 15834, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023)*; *Adam v. CHW Grp., Inc., No. 21-cv-19-LRR, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *2, 9 (N.D. Iowa Sept. 9, 2021)*. Therefore, since Defendant purportedly continued to send messages after receiving the "No stop" replies from Plaintiff, she has provided sufficient allegations that Defendant failed to "institute procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of [Defendant]." *47 C.F.R. § 64.1200(d)*.

Defendant contends that pursuant to *47 C.F.R. 64.1200(a)(1)*, there can be no TCPA violation where a plaintiff expressly consents to receiving the text and has not otherwise revoked that consent since that individual would no longer be on the entity's do-not-call list. Defendant argues that the phrase "No stop" indicated to the Defendant that it should continue to send the telemarketing messages to Plaintiff's phone number and therefore it did not need to **[*21]** put Plaintiff on its internal do-not-call list. The Court finds Defendant's argument unpersuasive.

Plaintiff's "No stop" messages do not conclusively establish that Plaintiff consented to future telemarketing messages from Defendant. The provision Defendant cites to— *47 C.F.R. § 64.1200(a)(10)*—provides that any

prior consent to receive text messages may be revoked by either "using the word stop, quit, end, revoke, opt-out, cancel, or unsubscribe' sent in reply to an incoming message" or "by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." Here, Plaintiff alleges that she texted the word "stop" in response to Defendant's telemarketing messages, creating a reasonable inference that she revoked any potential prior consent to receive telemarketing messages from Defendant. *See 47 C.F.R. § 64.1200(a)(10)* ("Any revocation request made . . . using the words 'stop,' . . . sent in reply to an incoming text message; or pursuant to a website or telephone number designated by the caller to process opt-out requests constitutes a reasonable means per se to revoke consent. If a called party uses any such method to revoke consent, that consent is considered definitively revoked **[*22]** and the caller may not send additional robocalls and robotexts."); *see also Persichetti, 479 F. Supp. 3d 1333, 2020 WL 4811003 at *1340* (finding claim was sufficient where there was a reasonable "inference that Defendant failed to honor Plaintiff's do-not-call request"). Although the word "No" precedes the word "stop" in the messages sent to Defendant, the Court finds that when viewing the allegations as true, a reasonable person would likely understand "No stop" to mean stop sending the receipt messages, not "continue" sending messages. *See 47 C.F.R. § 64.1200(a)(10)* ("If a reply to an incoming text message uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent."); *see also Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014)*

("[B]ecause the TCPA is a consumer protection statute that is remedial in nature, it should be construed liberally in favor of consumers."). This is especially true given Plaintiff's allegations that she was already on the national do-not-call registry and sent the "No stop" messages on multiple occasions. Under the circumstances, the phrase "No stop" cannot reasonably be understood as an invitation **[*23]** for continued solicitations. Moreover, Defendant offers no case law or other authority suggesting that the phrase "No stop" is an expression of consent such that the Court should dismiss Plaintiff's claims. Therefore, because there is no basis to dismiss either of Plaintiff's claims, Defendant's Motion is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [9]**, is **DENIED**.

2. Defendants shall file an answer to the Complaint no later than **October 2, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on **September 18, 2025**.

/s/ Beth Bloom

**BETH BLOOM**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASSANDRA BONAIR BOSLEY,              CASE NO. 1:25-CV-22336
individually and on behalf of all others
similarly situated,
    Plaintiff,                           Hon. Beth Bloom

vs.                                    Civil Division

A BRADLEY HOSPITALITY LLC d/b/a LA
MESA MIAMI
    Defendants.
_____/

## <u>MOTION TO DISMISS AND/OR STRIKE COMPLAINT</u>

    The DEFENDANT, A BRADLEY HOSPITALITY LLC d/b/a LA MESA MIAMI, moves this HONORABLE COURT pursuant to Order on Default Procedures [D.E. 7] and Rule 12(b)(1)-(6) and Rule 12(f) to dismiss and/or strike the Complaint [D.E.1] and states:

1. Plaintiff's Complaint seeks relief pursuant to the Telephone Consumer Protection Act (TCPA) 47 U.S.C. s. 227 and cites 47 CFR 64.1200 in support (both are attached hereto as an appendix).

2. The Complaint seeks relief based on two counts of statutory violations of the TCPA: 1) 47 U.S.C. 227 and 2) 47 U.S.C. 227(c)(5) associated with receiving seven text messages[1] between Dec. 31 and Feb. 18, five of which the reply of "No stop" was sent in English in response to the directive of "STOP to end" and a hyperlink to the Defendant's website LaMesa.com (which contains a contact link).

3. The Complaint concedes that the Plaintiff failed to opt-out from receiving the text messages as directed. (See paragraph #14 and #16 of the Complaint [D.E. 2] where Plaintiff replied "No

_____

[1] The text messages are in Spanish with the exception of the directive "STOP to end" and purport to qualify as a solicitation, however the translation is not provided. The Plaintiff's reply of "No Stop" is provided is in English.

stop" rather than "Stop" as directed.)

4.  Plaintiff alleges damages for: "[A]ctual harm, including invasion of per privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion… inconvenienc[e], … disruption to her daily life. Defendant's unwanted telemarketing caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message…. wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted calls. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of her time in addressing and attempting to stop Defendant's solicitations". See #37, #38, and #39 of the Complaint [D.E.1].

5.  Plaintiff seeks damages of $500 per violation of the TCPA, class certification, and an injunction.

## QUESTION PRESENTED

6.  The question before the Court is whether or not the Plaintiff has pled a valid cause of action for a violation of the TCPA for text messages sent after allegedly replying "No Stop" to five of the seven messages sent to her. The Plaintiff does not have Article III Standing and the Plaintiffs reply of "No Stop" in response to "STOP to end" was an expression of consent to the messages.

## LEGAL ANALYSIS

7.  *Eldridge v. Pet Supermarket, Inc.*, Case No. 18-22531-CIV-Williams presented facts nearly identical to the facts before the Hon. Kathleen Williams in March of 2020. The same matter was later filed in the state court and dismissed on similar grounds. See Pet Supermarket v. Troy

2

Eldridge, 360 So.3d 1201, 3rd DCA, 2023) Both Judge Williams order and the Opinion from

the Third District are attached hereto in the Appendix.

8.  The analysis herein supports Defendant's motion to strike the pleadings or otherwise direct the

Plaintiff to show cause why the matter should not be stricken for the basis stated therein by

Judge Williams (and Judge Lobree).

9.  The Plaintiff does not allege and cannot establish Article III Standing.

10. The Supreme Court explained in Spokeo, Inc. v. Robins, 578 St. Ct. 1540, 1547-1548 (2016):

> [T]he "irreducible constitutional minimum" of standing consists of three
> elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have:
>
> (1) suffered an injury in fact,
> (2) that is fairly traceable to the challenged conduct of the defendant, and
> (3) that is likely to be redressed by a favorable judicial decision. Id., at 560–
> 561, 112 S.Ct. 2130 ; Friends of the Earth, Inc., 528 U.S., at 180–181, 120 S.Ct.
> 693.
>
> The plaintiff, as the party invoking federal jurisdiction, bears the burden of
> establishing these elements. *FW/ PBS, Inc. v. Dallas,*493 U.S. 215, 231, 110
> S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading
> stage, the plaintiff must "clearly ... allege facts demonstrating" each element.
> *Warth*, supra, at 518, 95 S.Ct. 2197.6
>
> …Injury in fact is a constitutional requirement, and "[i]t is settled that Congress
> cannot erase Article III's standing requirements by statutorily granting the right
> to sue to a plaintiff who would not otherwise have standing." Raines, supra, at
> 820, n. 3, 117 S.Ct. 2312 ; see *Summers v. Earth Island Institute*, 555 U.S. 488,
> 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ; *Gladstone, Realtors v. Village of
> Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("In no event
> ... may Congress abrogate the Art. III minima").
>
> To establish injury in fact, a plaintiff must show that he or she suffered "an
> invasion of a legally protected interest" that is "concrete and particularized" and
> "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S., at 560,
> 112 S.Ct. 2130 (internal quotation marks omitted). We discuss the
> particularization and concreteness requirements below.
>
> For an injury to be "particularized," it "must affect the plaintiff in a personal
> and individual way." Ibid., n. 1; see also, e.g., *Cuno*, supra, at 342, 126 S.Ct.

3

1854 (" 'plaintiff must allege personal injury' "); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (" 'distinct' "); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("personal"); *Valley Forge*, supra, at 472, 102 S.Ct. 752 (standing requires that the plaintiff " 'personally has suffered some actual or threatened injury' "); *United States v. Richardson*, 418 U.S. 166, 177, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (not "undifferentiated"); *Public Citizen, Inc. v. National Hwy. Traffic Safety Admin.*, 489 F.3d 1279, 1292–1293 (C.A.D.C.2007) (collecting cases).7

Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete." Under the Ninth Circuit's analysis, however, that independent requirement was elided. As previously noted, the Ninth Circuit concluded that Robins ' complaint alleges "concrete, de facto " injuries for essentially two reasons. 742 F.3d, at 413. First, the court noted that Robins "alleges that Spokeo violated his statutory rights, not just the statutory rights of other people." Ibid. Second, the court wrote that " Robins's personal interests in the handling of his credit information are individualized rather than collective ." Ibid . (emphasis added). Both of these observations concern particularization, not concreteness. We have made it clear time and time again that an injury in fact must be both concrete and particularized. See, e.g., *Susan B. Anthony List v. Driehaus*, 573 U.S. ——, ——, 134 S.Ct. 2334, 2341–2342, 189 L.Ed.2d 246 (2014) ; *Summers*, supra, at 493, 129 S.Ct. 1142 ; *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 274, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) ; *Massachusetts v. EPA*, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007).

A "concrete" injury must be "de facto "; that is, it must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.

11. Standing is jurisdictional and may be raised by a Motion to Dismiss a complaint under R. 12(b)(1). See *Stalley v. Orlando Healthcare System, Inc*., 524 F.3d 1229, 1232 (11th Cir., 2008). A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice. Id. citing, Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 769 (11th Cir.1984). In reviewing the district court's decision to grant a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), we review the legal conclusions of the district court de

4

novo. <u>Stalley</u> at 1233 citing <u>McElmurray v. Consol. Gov't of Augusta-Richmond County</u>, 501 F.3d 1244, 1250 (11th Cir.2007).

12. A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. <u>Id</u>., at 1251. "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Id.,  at 1233-1234.

13. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony. <u>Id., </u> at 1234.

14. Affirmative defenses that appear clear on the pleadings support dismissal of the complaint. See <u>Clark v. Amoco Prod. Co.</u>, 794 F.2d. 967, ,970 (5th Cir., 1986).

<i><u>The Text Messages are not Advertisements</u></i>

15. Seven Text Messages over the course of three months are alleged in the Compliant (see paragraphs 14 and 16).   The first text message on Dec. 31 is not translated and warrants (dismissal without prejudice on that basis alone). However, for the sake of argument, it merely announces that there is movie night and comedy without providing a date, time, or price.  There is no "call to action".  The same announcement without a "call to action" is specified in the second text message.  The third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP clients.  See paragraph 14 of the Complaint [D.E.1].

16.  The last four texts are also merely announcements without any "call to action".  See paragraph 16 of the Complaint [D.E. 1].

17. The allegations before the court are that the text messages sent qualify as an "advertisement"

without express consent in violation of 47 CFR 64.1200.

18. TCPA defines "advertisements" as any material advertising the commercial availability or quality of any property, goods, or services". See 47 CFR 64.1200 (f).

19. The seven text messages do not specify the availability or quality of the "shows" being advertised and are therefore not "advertisements" and are merely informational.

*Concrete Injury*

20. Like the Plaintiff in <u>Eldrige v. Pet Supermarket, Inc.</u>, the Plaintiff before this Court did not allege a concrete injury.

21. The Plaintiff merely alleged the conclusory term "actual harm" in paragraphs #37 and #38 of the Complaint and claims an "invasion of privacy" and "annoyance" through the use of duplicitous phrases. See Paragraph #37.

22. The Plaintiffs rationale suggesting that seven text messages sent over the course of three months announcing different events are not "qualitatively the kind of harm that constitutes injury in fact (by advertising)". See <u>Eldrige</u> citing <u>Salcedo v. Alex Hanna</u>, 936 F.3d 1162 (11th Cir. 2019) (In <u>Muccio v. Glob. Motivation</u>, 23-10081, (11th Cir. Aug. 2023 the court vacated <u>Salcedo</u>, however the facts are distinguishable. There were five text messages in that matter sent for the sale of consumer goods sent to over 100 people and the court determined that such an advertisement could be an "intrusion upon seclusion").

23. Analogous to the reasoning in <u>Eldrige</u>, a few seconds to read a small message spread over months requires more to establish a concrete harm. See <u>Eldrige</u> p. 12.

24. Lastly, the the Compliant also fails to make mention to the evident affirmative defense provided by 47 U.S.C 227(c)(5) which provides:

It shall be an affirmative defense in any action brought under this paragraph that the defendant

has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

25. 47 CFR 64.1200(a)(10) provides that:

"A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming text message;…. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent. Should the text initiator choose to use a texting protocol that does not allow reply texts, it must provide a clear and conspicuous disclosure on each text to the consumer that two-way texting is not available due to technical limitations of the texting protocol, and clearly and conspicuously provide on each text reasonable alternative ways to revoke consent. All requests to revoke prior express consent or prior express written consent made in any reasonable manner must be honored within a reasonable time not to exceed ten business days from receipt of such request. Callers or senders of text messages covered by paragraphs (a)(1) through (3) and (c)(2) of this section may not designate an exclusive means to request revocation of consent."

26. Plaintiff concedes in its paragraphs #14 and #16 to replying to the text messages with the phrase "No stop" in English just after being directed to type "STOP to end" if she wanted the text messages to stop.

27. "No" preceded "stop" conveying that the Defendant not "stop," but rather continue.

28. The Plaintiff's directive to Defendant "no stop" implied to Defendant an express consent to "keep going" or continue providing the text messages.  The express consent to receive the subsequent messages precludes the Plaintiff's recovery.

WHEREFORE, for the reasons stated herein, it is moved that the matter be dismissed.

7

**Certificate of Service**

   I certify that a copy of the foregoing was served on July 8, 2025 upon filing in CM/ECF electronic filing system to the parties include on the attached service list.

       /s/Matthew E. Ladd, Esq., 668151
       Matthew E. Ladd, P.A.
       4649 Ponce De Leon Blvd., Suite 301
       Coral Gables, FL 33146
       T: 305-665-3978
       C: 305-984-4649
       Attorney for the Defendants

SERVICE LIST

Shamis & Gentile, P.A.
Andrew J. Shamis, Esq. Florida Bar # 101754
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

EDELSBERG LAW, P.A.
Scott Edelsberg, Esq. Florida Bar No. 0100537
Scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

Counsel for Plaintiff and the Class.

# APPENDIX I
# 47 U.S.C. 227 Highlighted
# with 47 CFR 64.1200

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:25-cv-22336-BLOOM/Elfenbein

**CASSANDRA BONAIRE BOSLEY,** individually
and on behalf of others similarly situated,

    Plaintiff(s),

vs.

**A BRADLEY HOSPITALITY LLC D/B/A LA
MESA MIAMI,**

    Defendant(s).

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE COMPLAINT

Plaintiff Cassandra Bonaire Bosley ("Plaintiff") hereby responds in opposition to Defendant A Bradley Hospitality LLC D/B/A La Mesa Miami's ("Defendant") Motion to Dismiss and/or Strike Complaint (the "Motion"), ECF No. 9, for the reasons set forth herein.

## I.     INTRODUCTION

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 613 (2020). Defendant, a hospitality company and restaurant based in Miami, Florida, spams consumers with text messages advertising its products and services even *after* those consumers request to be opted-out from Defendant's solicitations. This is a putative class action alleging that Defendant violated Plaintiff's and the class members' rights under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* by sending automated promotional text messages to Plaintiff and the putative class (1) despite having registered their residential

1

telephone numbers on the National Do Not Call Registry (2) after they had requested to be opted-out and (3) while Defendant failed to comply with internal do-not-call list regulations promulgated by the Federal Communications Commission ("FCC"). Plaintiff seeks statutory damages and injunctive relief enjoining Defendant from sending promotional text messages to Plaintiff and the class members.

Specifically, Plaintiff's Complaint alleges that Defendant violated 47 C.F.R. § 64.1200(c)(2) of the TCPA by sending numerous telemarketing text messages to her (and the putative class's) telephone number, despite having registered her number on the National Do Not Call Registry years prior. After receiving multiple text messages from Defendant, Plaintiff responded, "No stop"—an instruction that she gave at least twice. Defendant failed to honor Plaintiff's stop requests for months, so Plaintiff alleges that Defendant also violated the TCPA by sending these messages without the minimum procedures required under 47 C.F.R. § 64.1200(d).

Despite Plaintiff's clear and well-supported allegations, Defendant throws the proverbial spaghetti at the wall by moving to dismiss and to strike under Rules 12(b)(1), 12(b)(6), and 12(f). These remedies are unwarranted for four reasons.

First, Defendant's argument that Plaintiff lacks standing relies on outdated case law and ignores unfavorable, but controlling, Eleventh Circuit precedent. *See* Def.'s Mot. Dismiss &/or Strike Compl. ¶ 7, ECF No. 9 [hereinafter Def.'s Mot.] (relying on *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1071 (S.D. Fla. 2020)). Under current law, a plaintiff who received "a ***single*** unwanted, illegal telemarketing text message suffered a concrete injury." *See Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) (emphasis added); *see also Muccio v. Glob. Motivation, Inc.*, No. 23-10081, 2023 WL 5499968, at *1 (11th Cir. Aug. 25, 2023).

2

Second, Defendant makes the preposterous argument that "Plaintiffs reply of 'No stop' in response to 'STOP to end' was an expression of consent to the messages." Def.'s Mot. ¶ 6. This defies not only logic, but also the text of 47 C.F.R. § 64.1200(a)(10), which provides that prior express consent may be revoked "by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." Plaintiff's "No stop" opt out requests were reasonable, unambiguous and clearly expressed her desire to Defendant to cease sending further text messages to her.

Third, Defendant argues that the text messages are not "advertisements" because they do not contain a "call to action." This is irrelevant—neither cause of action alleged by Plaintiff (violations of 47 C.F.R. § 64.1200(c) and (d)) even includes the word "advertisement." Rather the operative terms are "telephone solicitation" and "telemarketing" which are both defined by the TCPA as "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f). Regardless, Plaintiff's Complaint adequately alleges that Defendant's text messages were sent for telemarketing purposes.

Fourth and finally, Defendant fails to identify the portion of the Complaint it seeks to strike, other than the entire document, and otherwise fails to provide a reasonable basis for doing so.

Because striking and dismissal are inappropriate, Defendant's Motion must be denied in its entirety.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for lack of subject matter jurisdiction based on either a facial or factual attack. If a movant makes a facial attack, as here, "the plaintiff is left with the safeguards similar to those

retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). Accordingly, the court must simply "'look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alteration in original).

**B.      Motion to Dismiss for Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss, Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has expanded upon this standard, explaining that it "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Indeed, the purpose of the complaint is simply "to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]'" *Id.* (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)).

To determine whether these requirements are satisfied on a motion to dismiss, the Supreme Court put forth a two-pronged analysis. First, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**C.      Motion to Strike**

Rule 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" either on its own or pursuant to a pre-

answer motion. Fed. R. Civ. P. 12(f). On a motion to strike, "the court 'must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings." *DeJesus v. Cigna Corp.*, No. 6:17-cv-1208-Orl-41TBS, 2018 WL 375579, at *2 (M.D. Fla. Jan. 11, 2018) (quoting *Fla. Software Sys. v. Columbia/HCA Healthcare Corp.*, No. 97-2866-cv-T-17B, 1999 WL 781812, at *1 (M.D. Fla. Sept. 16, 1999)).

However, such motions are "not favored" by this District and are "regularly 'denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (quoting *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech.*, 744 F. Supp. 2d 1305, 1309 (S.D. Fla. 2010)). Further, "[s]triking material from 'a party's pleading is an extreme measure, and, as a result,' courts have held that motions 'to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Silva v. Swift*, 222 F.R.D. 245, 247 (N.D. Fla. 2019) (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). "This disfavor arises from the law's preference for ensuring that cases are decided on their merits and the reluctance to tamper with pleadings absent a strong reason for doing so." *Id.* (collecting cases). Courts "also cast a skeptical eye upon motions to strike pleadings '… because it is often sought by the movant simply as a dilatory or harassing tactic[.]'" *Id.* (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2004)). Accordingly, "'[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *DeJesus*, 2018 WL 375579, at *2 (quoting *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010)).

## III.   **FACTUAL ALLEGATIONS**

Plaintiff is the subscriber and sole user of her cellular telephone number ending in 9198 (the "9198 Number"), which she uses for personal, residential purposes. Compl. ¶¶ 32-33, ECF No. 1. Plaintiff registered her 9198 Number on the National Do-Not-Call Registry on November 11, 2009, and it has been registered at all relevant times. *Id.* at ¶ 34.

Despite this, Defendant sent or caused to be sent multiple telemarketing text messages from 786-746-9484 to Plaintiff's 9198 Number, beginning on approximately December 11, 2024, and continuing through at least February and March of 2025. *Id.* at ¶¶ 13, 15-16. Plaintiff requested to opt out of further messages from Defendant on at least January 2 and February 15, 2025, by responding to Defendant's 786-746-9484 number with the message, "No stop[.]" *Id.* at ¶¶ 14, 16. Though Defendant is capable of immediately complying with Plaintiff's unequivocal opt-out requests, Defendant continued to bombard Plaintiff's 9198 Number. *See id.* at ¶¶ 14-17.

Defendant's text messages constitute telemarketing because they were sent to encourage the future purchase or investment in property, goods, or services—*i.e.*, they promoted Defendant's restaurant and entertainment services. *Id.* at ¶ 22. The information contained in the text messages advertises Defendant's various discounts and promotions, which Defendant sends to promote its business. *Id.* at ¶ 23. These text messages were not made for an emergency purpose or to collect a debt pursuant to 47 U.S.C. § 227(b)(1)(B). *Id.* at ¶ 27.

Further, Plaintiff never provided Defendant with her express written consent to be contacted. *Id.* at ¶ 28. Specifically, Plaintiff never completed any form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages. *Id.* at ¶ 29. Plaintiff also has no existing business relationship with Defendant. *Id.* at ¶ 30. To the extent that Defendant ever had any consent to contact Plaintiff for

marketing purposes, this consent was expressly revoked on at least January 2, 2025, when Plaintiff responded to Defendant with the message "No stop." *Id.* at ¶ 31.

Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. *Id.* at ¶ 37. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life. *Id.* Indeed, Plaintiff estimates that she wasted fifteen to thirty seconds reviewing each of Defendant's unwanted text messages, which required her to stop what she was doing to retrieve her phone and/or look down at the phone to review the message. *Id.* at ¶ 38. Plaintiff also wasted approximately fifteen minutes locating and retaining counsel for this case to stop Defendant's unwanted calls. *Id.* at ¶ 39.

## IV.   <u>ARGUMENT</u>

### A.  **Plaintiff Has Standing to Sue and this Court Has Subject Matter Jurisdiction.**

Defendant begins its Motion with the preposterous claim that "Plaintiff *does not allege* and *cannot establish* Article III Standing." Def.'s Mot. ¶ 9 (emphasis added). This could not be further from the truth.

In making this faulty assertion, Defendant relies on outdated case law and ignores controlling Eleventh Circuit precedent.[1] *See id.* at ¶¶ 7, 20-23. Specifically, Defendant claims that "seven text messages sent over the course of three months [to Plaintiff's 9198 Number] announcing different events" do not cause an injury-in-fact pursuant to *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1071 (S.D. Fla. 2020), and *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), *abrogated by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Def.'s Mot.

---

[1] This significant oversight goes against Rule 4-1.1 of the Florida Rules of Professional Conduct, which requires adequate preparation and research into the legal issues.

¶ 22. However, Defendant fails to acknowledge that the Eleventh Circuit recently overruled *Salcedo*, which formed the basis of *Pet Supermarket*'s holding, and determined that a plaintiff who receives "a ***single*** unwanted, illegal telemarketing text message suffer[s] a concrete injury." *Drazen*, 74 F.4th at 1339 (emphasis added). The Eleventh Circuit then reaffirmed this conclusion in *Muccio v. Global Motivation, Inc.*, No. 23-10081, 2023 WL 5499968, at *1 (11th Cir. Aug. 25, 2023).

Defendant attempts to distinguish *Muccio* but misunderstands the case entirely. *See* Def.'s Mot. ¶ 22 ("In <u>Muccio v. Glob. Motivation</u>, … the court vacated <u>Salcedo</u>, however the facts are distinguishable. There were five text messages in that matter sent for the sale over consumer goods sent to over 100 people and the court determined that such an advertisement could be an 'intrusion upon seclusion.'").[2] Indeed, the number of text messages and recipients in *Muccio* is irrelevant to whether "such an advertisement could be an 'intrusion upon seclusion[,]'" and thereby cause an injury-in-fact. Def.'s Mot. ¶ 22; *see Muccio*, 2023 WL 5499968, at *1. Since the Court had already determined in *Drazen* that "[t]he harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion[,]" the only relevant fact was whether Muccio had received a single unwanted text message. *Id.* (quoting *Drazen*, 74 F.4th at 1345). Muccio had received five such messages, so the Court found that he had standing. *Id.*

Akin to *Muccio* and *Drazen*, the Complaint makes it clear that Defendant sent, or caused to be sent, more than one unwanted telemarketing text message to Plaintiff's 9198 Number. Compl.

---

[2] Defendant incorrectly claims that the Eleventh Circuit vacated *Salcedo* in *Muccio*. Def.'s Mot. ¶ 22. *Salcedo* had already been abrogated by *Drazen* a month before *Muccio* was decided. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), *abrogated by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Instead, the Eleventh Circuit explained in *Muccio* that it "vacated the panel opinion in *Drazen I* and reheard it as a full court." 2023 WL 5499968, at *1.

¶¶ 13-16. These allegations are supported by screenshots of these messages, which name Defendant. *See id.* at ¶¶ 14, 16. Plaintiff also establishes that her 9198 Number was on the DNCR, that she did not provide prior express consent to be contacted by Defendant, that she did not have an established business relationship with Defendant, and that any consent Defendant thought it had was revoked when she texted "No stop." *Id.* at ¶¶ 28-31, 34. These allegations must be taken as true on a motion to dismiss. *See McElmurray*, 501 F.3d at 1251 (explaining that a plaintiff's allegations must be taken as true on a Rule 12(b)(1) motion to dismiss); *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (stating that on a Rule 12(b)(6) motion to dismiss, the court must accept the allegations as true and construe them in the light most favorable to the plaintiff); *Ashcroft*, 556 U.S. at 679 (same). Accordingly, Plaintiff plausibly pleads that she received more than one unwanted telemarketing text message from Defendant and therefore has standing to sue.

Defendant's Motion should therefore be denied.

**B.      Plaintiff's Requests to Opt-Out of Text Messages Do Not Constitute Consent to Continue.**

Perhaps most outrageous is Defendant's argument that "Plaintiff's directive to Defendant 'no stop' implied to Defendant an express consent to 'keep going' or continue providing the text messages." Def.'s Mot. ¶ 28. Defendant cites to the regulation discussing revocation of consent but omits a crucial component and otherwise fails to apply this rule to the facts. *See* Def.'s Mot. ¶ 25 (quoting 47 C.F.R. § 64.1200(a)(10)).

Importantly, the regulation states that "using the word[] **'stop,'** … sent in reply to an incoming text message … **constitutes a reasonable means per se to revoke consent**." 47 C.F.R. § 64.1200(a)(10) (emphasis added). Defendant intentionally conceals this language, instead replacing it with an ellipsis. *See* Def.'s Mot. ¶ 25 ("[U]sing the words 'stop,' 'quit,' 'end,' 'revoke,' 'opt-out,' 'cancel,' or 'unsubscribe' sent in reply to an incoming text message; …. If a called party

uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts.") (quoting 47 C.F.R. § 64.1200(a)(10)). Irrespective of this significant omission, Plaintiff's "No stop" text messages contain the word "stop," and are therefore *per se* reasonable revocations and Defendant may not limit the manner in which consumers can revoke their consent.

Since 1991, "[t]he FCC's guidance on the matter of revocation [has been] unambiguous: 'A called party may revoke consent at any time and through any reasonable means[,]'" and contrary to Defendant's argument, "'[a] caller may not limit the manner in which revocation may occur.'" *Patterson v. Ally Fin., Inc.*, No. 3:16-cv-1592-J-32JBT, 2018 U.S. Dist. LEXIS 15203, at *6 (M.D. Fla. Jan. 31, 2018) (quoting 30 *In re Rules & Regulations Implementing the TCPA of 1991*, FCC Rcd. 7961, 7989-90 (2015); *In re Rules & Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8766 n.47 (1992) (describing how subscribers may revoke consent to future contact); *see also Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 879 (11th Cir. 2016) ("No specific method is required under the TCPA for a caller to obtain prior consent to place automated calls or to subsequently revoke that consent.").

Even if the word "no" in Plaintiff's messages removes them from the *per se* reasonable category, they would still be valid revocations. Indeed, the regulation states that "[a] called party may revoke prior express consent … by using ***any reasonable method*** to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10) (emphasis added). And "[i]f a reply to an incoming text message uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent." *Id.*

Plaintiff's "No stop" replies are unambiguous. No reasonable person would understand "No stop" to mean "continue" as Defendant argues. *See* Def.'s Mot. ¶ 27 ("'No' preceded 'stop' conveying that the Defendant not 'stop,' but rather continue."). This is illogical. And though Defendant's text messages say, "STOP to end," the regulation ultimately allows for other reasonable means of revoking consent. *See* 47 C.F.R. § 64.1200(a)(10). Further, this Court has found similar language to constitute a valid revocation. *See Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354-55 (S.D. Fla. 2014) (finding "STOP ALL" text message to be a valid revocation and denying motion to dismiss). Accordingly, Plaintiff's "No stop" text messages did not confer her consent or otherwise imply that Defendant should continue to reach out, as Defendant's Motion claims. *See* Def.'s Mot. ¶¶ 3, 26-28.

Plaintiff's Complaint establishes that she never provided prior express consent to be called or texted by Defendant, that she did not have an established business relationship, and that her 9198 Number was listed on the National Do Not Call Registry. Compl. ¶¶ 28-31, 34. Taking these facts as true, each text message sent to Plaintiff *before* her stop request was without consent and in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

Then, Plaintiff further emphasized her desire not to be contacted by responding, "No stop," more than once. *Id.* at ¶¶ 14-16, 31. Though stop requests "must be honored within a reasonable time not to exceed ten business days[,]" Defendant persisted for months. 47 C.F.R. § 64.1200(a)(10). Based on this, Plaintiff alleged that Defendant lacked the procedural safeguards required by 47 C.F.R. § 64.1200(d) when Defendant sent the messages. Compl. ¶¶ 24-25. Taking these facts as true, Plaintiff plausibly pleads that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

Even further, District courts have concluded that a plaintiff sufficiently alleges lack of adequate procedures by alleging that the defendant "did not have reasonable practices and procedures in place to effectively prevent telephone solicitations . . . as evidenced by its calls to [the p]laintiff who repeatedly requested [the d]efendants stop calling." *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620, at *22 (N.D. Iowa Sep. 9, 2021) ("Here, Adam requested that CHW stop calling him, CHW did not, and based on CHW's failure to stop calling him, Adam alleges that CHW violated the procedures required in 47 C.F.R. § 64.1200(d)."); *see also Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464, at *9 (E.D. Wis. May 16, 2022) ("This escalation in contact, seemingly in direct response to Plaintiff's requests to stop contact, plausibly indicates that Align violated the TCPA's regulations by failing to honor Plaintiff's do not-call requests within a reasonable amount of time.") (citing *Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 U.S. Dist. LEXIS 42356, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018)); *Kirkland v. JD Byrider DFW Tex. Inc.*, Civil Action No. 3:23-CV-1939-X, 2024 U.S. Dist. LEXIS 5627, at *2 (N.D. Tex. Jan. 10, 2024) ("Here, Kirkland plausibly alleges he requested to not receive communications from JD ByRider and they continued even after 30 days. He has pled a claim that plausibly and textually complies with then-current federal regulations.").

In other words, "[c]ourts have inferred that internal do-not-call procedures are deficient when calls to an individual who has requested not to be called continue." *Mattson v. Quicken Loans. Inc.*, No. 3:18-CV-00989-YY, 2018 U.S. Dist. LEXIS 180737, at *6 (D. Or. Oct. 22, 2018) (citing *Rorty v. Quicken Loans Inc.*, 2012 U.S. Dist. LEXIS 198911, 2012 WL 12886842, at *7 (C.D. Cal. July 3, 2012); *Nece*, 2017 WL 2865047, at *2; *Andrews v. All Green Carpet & Floor Cleaning Serv.*, 2015 U.S. Dist. LEXIS 76017, 2015 WL 3649585, at *5 (C.D. Cal. June 11, 2015);

*Kazemi v. Payless Shoesource Inc.*, 2010 U.S. Dist. LEXIS 27666, 2010 WL 963225, at *3 (N.D. Cal. Mar. 16, 2010)); *see also Daschbach v. Rocket Mortg., LLC*, 2023 U.S. Dist. LEXIS 48139, at *31 (D.N.H Mar. 22, 2023) ("Daschbach alleges that Rocket Mortgage did not honor his request to stop communicating when it sent him two text messages following the request. The court can reasonably infer from this allegation that Rocket Mortgage failed to institute procedures to prevent such errors."); *Persichetti v. T-Mobile United States*, 479 F. Supp. 3d 1333, 1340 (N.D. Ga. 2020); *Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 2016 WL 1257815 at *13 (D. Conn. 2016) (stating that the "existence of a single failure to record an honor and honor an individual's request to be placed on the [do-not-call] list can be evidence of a failure to implement proper procedures. . ."); *Cahill v. Pryor S.C.*, No. 24 C 2476, 2024 U.S. Dist. LEXIS 161185, at *3 (N.D. Ill. Sep. 9, 2024) ("The reasonable inference to draw therefrom is that PryorHealth did not honor her opt-out request because it did not have policies, personnel training, or do-not-call request tracking in place to prevent this unwanted contact. Indeed, PryorHealth does not offer any reason, let alone a plausible one, that would explain how it could fail to honor opt-out requests while also satisfying its obligations under the TCPA and 47 C.F.R. § 64.1200(d).").

Plaintiff's Complaint establishes that Defendant never had consent to contact her in the first place. It states that she never provided prior express consent to be called or texted by Defendant, that she did not have an established business relationship, and that her 9198 Number was listed on the DNCR. Compl. ¶¶ 28-31, 34. Taking these facts as true, each text message sent to Plaintiff was without consent and in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

The Complaint then establishes that Plaintiff responded "No stop" more than once. *Id.* at ¶¶ 14-16, 31. Though stop requests "must be honored within a reasonable time not to exceed ten

business days[,]" Defendant persisted for months. 47 C.F.R. § 64.1200(a)(10). Based on this, Plaintiff alleged that Defendant lacked the procedural safeguards required by 47 C.F.R. § 64.1200(d) when Defendant sent the messages. Compl. ¶¶ 24-25. Taking these facts as true, Plaintiff plausibly pleads that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

Since Plaintiff has undoubtedly met the pleading standard on both Counts alleged in the Complaint, Defendant's Motion must be denied.

### C. It is Irrelevant Whether Defendant's Text Messages Are "Advertisements"— They Are "Telephone Solicitations" and "Telemarketing" Under the TCPA.

Next, Defendant misguidedly argues that the text messages it sent are not "advertisements" because they lack a "call to action." Def.'s Mot. ¶¶ 15-19. However, this is not the relevant inquiry—the word "advertisement" does not even appear in 47 C.F.R. § 64.1200(c) and (d).

For a call or text message to violate 47 C.F.R. § 64.1200(c), it must constitute a "telephone solicitation." Similarly, a call or text must have been made "for telemarketing purposes" to violate 47 C.F.R. § 64.1200(d). The definitions of these terms are mostly identical[3]—they refer to "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. 64.1200(f)(13); *see also id.* at § 64.1200(f)(15); 47 U.S.C. § 227(a)(4).

In the Complaint, Plaintiff specifically alleges that Defendant's text messages constitute telemarketing because they were sent to promote Defendant's restaurant and entertainment services and informed recipients of Defendant's discounts and promotions. Compl. ¶¶ 22-23. These allegations are supported by screenshots of the messages, which identify Defendant,

---

[3] The terms "telephone solicitation" and "telemarketing" will be used interchangeably for purposes of this brief.

advertise upcoming discounts and events, and include Defendant's website and phone number. *See id.* ¶¶ 14, 16. Taken as true, Plaintiff has plausibly pled that Defendant's text messages constitute telemarketing.

Further, courts have held that a message constitutes telemarketing if the defendant would gain financially from the plaintiff acting upon the message. *See Lawson v. Visionworks of America, Inc.*, 741 F. Supp. 3d 1251, 1254–55 (M.D. Fla. 2024) ("Simply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message."); *Suescum v. Fam. First Life, LLC*, No. 6:21-cv-1769, 2023 WL 311144, at *2 (M.D. Fla. Jan. 19, 2023) ("[S]ervices that appear to be free or to offer recruitment opportunities may 'serve as a mere pretext for commercial services.' …. This is known as a dual purpose message—'a message [that] may also constitute telemarketing where it ultimately leads to the promotion of goods or services, even if the text may be otherwise benign.") (quoting *Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014), and *Mittelmark v. Yoga Joint S., LLC*, No. 18-62138-CIV, 2018 WL 11460013, at *3 (S.D. Fla. Dec. 17, 2018)). By this view, Defendant's text messages are telemarketing—had Plaintiff acted upon Defendant's text messages by attending a comedy show or movie night as advertised in the messages, Defendant would have gained financially.

Courts in this Circuit have also found similar allegations to constitute "telephone solicitations" under the TPCA. *See Brown v. Care Front Funding*, No. 22-cv-2408, 2023 WL 3098355, at *3 (M.D. Fla. Apr. 6, 2023) (finding allegations that Defendant called plaintiff's cell phone number three times to "solicit business by 'attempting to persuade Plaintiff to obtain a loan[,]'" despite registering this number on the National Do Not Call Registry sufficient to state a claim under 47 U.S.C. § 227(c)(5)); *Klassen v. Protect My Car Admin Servs., Inc.*, 599 F. Supp.

3d 1243, 1246 (M.D. Fla. 2021) (finding that plaintiff plausibly pled violations of Section 227(c) where she alleged that she listed her cell phone number on the DNCR but received at least five calls from defendant "for solicitation purposes."); *Nece v. Quicken Loans, Inc.*, 2017 WL 2865047, at *1 (holding that plaintiff established a violation of Section 227(b) where she alleged that she "listed her number on the do-not-call registry, but [defendant] called [her number] several times within a year to solicit business.").

Since Plaintiff's Complaint plausibly pleads that Defendant's text messages constitute "telephone solicitations" and "telemarketing," dismissal under Rule 12(b)(6) is unwarranted and Defendant's Motion must be denied.

### D. Striking the Complaint Under Rule 12(f) is Unwarranted and Highly Disfavored by Courts.

Finally, Defendant invokes Rule 12(f) but fails to clearly identify what it seeks to strike from the Complaint and its basis for seeking such relief. Defendant cryptically states that "[t]he analysis herein supports Defendant's motion to strike the pleadings or otherwise direct the Plaintiff to show cause why the matter should not be stricken for the basis stated" in *Pet Supermarket.* Def.'s Mot. ¶¶ 7-8.

However, the Rule provides that "[t]he court may strike ***from*** a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). The inclusion of the word "from" implies that this measure applies only to specific components of a pleading, not the pleading in its entirety. Further, none of the categories enumerated in Rule 12(f) support striking a pleading based on lack of standing—even *Pet Supermarket* dismissed the complaint pursuant to Rule 12(b)(1). 446 F. Supp. 3d at 1072. Defendant identifies no other "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Defendant weakly alludes to Rule 12(f) by claiming that "[a]ffirmative defenses that appear clear on the pleadings support dismissal of the complaint." Def.'s Mot. ¶ 14 (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). The Motion later claims that "the Complaint fails to make mention to the evident affirmative defense provided by 47 U.S.C. § 227(c)(5)[.]" *Id.* at ¶ 24. But this argument is untenable—it is not Plaintiff's burden to assert affirmative defenses on behalf of Defendant. *Lardner v. Diversified Consultants Inc.*, 17 F. Supp.3d 1215, 1224 (S.D. Fla., 2014) (citing *Grant v. Capital Mgmt. Servs., L.P.,* 449 Fed. Appx. 598, 600 n. 1 (9th Cir.2011)) ("'[P]rior express consent' is 'an affirmative defense for which the defendant bears the burden of proof.'"); *see also Breslow v. Wells Fargo Bank, N.A.,* 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012).

Further, Defendant then seems to argue that affirmative defenses that "the Complaint fails to [] mention"—**i.e., information *absent* from the Complaint**—should be stricken. *Id.* This is nonsensical.

Because the Complaint does not contain "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and because Rule 12(f) does not support striking a pleading in its entirety, Defendant's Motion should be denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and/or Strike Complaint in its entirety.

Dated: July 21, 2025

Respectfully Submitted,

**SHAMIS & GENTILE, P.A.**

*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Forida Bar No. 101754
ashamis@shamisgentile.com
Christopher Berman, Esq.

Florida Bar No. 1010654
cberman@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Counsel for Plaintiff and the Classes*.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served

this day on all counsel identified below via transmission of Notices of Electronic Filing generated

by CM/ECF or in some other authorized manner.

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**

14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
 Email: efilings@shamisgentile.com

By:      */s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754